# Central State Hospital, By, etc., et al. v. O'Donnell's Administrator.

(Decided June 12, 1923.)

## Appeal from Shelby Circuit Court.

1. Insane Persons—Statute Authorizing State Board to Fix Cost of Support of Persons Supported by State Applies to Insane Patients in Hospital.—In view of the fact that Acts 1918, c. 14, sections 1, 3, 4, fixing the per capita rate for patients in hospitals for the insane by its terms would expire June 30, 1920, and that the rate therein fixed for pay patients, which it was the policy of the state to make the same as the per capita appropriation, would, therefore, likewise expire on the same date, the provision of Acts 1918, c. 54, enacted at the same session, authorizing the State Board of Charities and Corrections to fix the rate to be paid for the support of any person supported by the state, applies to insane persons in the state hospitals, though the first section of that chapter, providing that all poor or indigent, feeble-minded, or epileptic persons should be wholly supported by the state, did not mention insane persons.

2. Insane Persons—Denial Charge Fixed by Board was Reasonable Does Not Require Board to Prove Reasonableness.—In an action against the administrator of a deceased insane person to recover for his support while confined in a state hospital, a denial that the rate fixed for such support by the State Board of Charities and Corrections was reasonable does not require the board to establish the reasonableness of the charge, since it was empowered by law to determine the charge, the presumption is that it did its duty, and its finding is conclusive, in the absence of allegation and proof that it acted corruptly, arbitrarily, or by mistake.

3. Insane Persons—Patient Enters Institution Subject to Right of State to Change Charge for Maintenance at Pleasure.—Whether the state will maintain asylums for the insane and, if so, what rate it will charge, are matters which the state alone has power to decide, and when a patient enters an asylum he enters subject to the state's right to abolish the institution or to change the charge of his maintenance, and a change of such charge does not impair any contract.

4. Pleading—Omission from Answer Held Cured by Allegations in Petition.—Under Ky. Stats., section 257, the statute of limitations on the state's right to recover for support of patient in asylum begins to run when the patient acquires an estate. Held, that the failure of answer, pleading the statute of limitations against such right of the state to recover for patient's support, to allege that the patient had acquired his estate more than five years before the commencement of the action, was not fatal to the plea of limita-

tions, in view of allegations of the petition that at all times that he was a patient he had sufficient estate to pay for his support.

J. P. HOBSON and E. H. DAVIS for appellants.

E. B. BEARD for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

This suit was originally brought by the Central State Hospital against the Shelby County Trust & Banking Company, administrator of Charles O'Donnell, deceased, to recover for O'Donnell's maintenance while an inmate of the hospital. Afterwards, the State Board of Charities and Corrections was made a party plaintiff. Between February 26, 1910, and June 30, 1918, a recovery was sought at the rate of $150.00 per annum. Between July 1, 1918, and June 30, 1920, a recovery was sought at the rate of $190.00 per annum. Between July 1, 1920, and April 27, 1922, a recovery was sought at the rate of $1.00 per day. The court sustained the plea of limitation to so much of the claim as accrued more than five years before the bringing of the action, and gave judgment at the rate of $150.00 per year up to July 1, 1920, and at the rate of $190.00 a year after that time. From that judgment this appeal is prosecuted.

It is the contention of the State Board of Charities and Corrections that the recovery after July 1, 1920, should have been at the rate of $7.00 per week. The basis of this contention is that prior to that date, it made an order fixing that rate, and that its action was authorized by the statutes then in force.

At its 1918 session the legislature passed "An act relating to charitable institutions, and providing and appropriating an annual per capita for the pauper and part pay inmates of the Eastern, Western and Central State Hospitals, and for the Kentucky Institute for Feeble Minded Children, and fixing the amount of per capita to be paid by inmates of said institutions who may be able to pay, and repealing laws in conflict." This act was approved March 19th and is chapter 14, Acts 1918. Sections 1, 3 and 4 are as follows:

1. "The annual per capita appropriations for the years 1918 and 1919, and until June 30, 1920, to the institutes named in section 2 shall be, and are, and shall not exceed the sum of one hundred and ninety dollars per annum."

3. "Part pay and full pay patients or inmates are to be charged, and are to pay at the rate of fifteen dollars eighty-three and one-third cents per month, and for special attention patients or inmates who are able to pay more may pay such a monthly sum as may be agreed upon by the head of the institutions and the friends or relatives of such patient or inmate, however, to exceed ten dollars per month."

4. "It is the intention of the General Assembly in enacting this law to fix the per capita of each of the institutions above named at the rate of one hundred and ninety dollars annually, and any and all laws fixing any other per capita rate and all laws in conflict herewith are hereby repealed, but this act shall not be held to repeal any law making general appropriations to any of the above named institutions."

At the same session the legislature passed "An act to provide for the commitment, care, treatment, training, segregation and custody of feeble-minded, epileptic and insane persons; to provide an appropriation therefor and to repeal all acts inconsistent herewith, and specifically sections 264 to 271 inclusive of the Kentucky Statutes, Carroll's edition of 1915, which concern the Kentucky Institute for Feeble-Minded Children, and sections 2156 to 2171 inclusive, of the Kentucky Statutes, Carroll's edition of 1915, which concern idiots and lunatics, and to provide penalties for the violation of this act." This act is chapter 54, Acts 1918. Section 34 is as follows:

"All poor or indigent feeble-minded or epileptic persons committed to the state institution for the feeble-minded and epileptic shall, while therein, be wholly supported by the state. The costs necessarily incurred in the transfer of such persons to such institutions shall be a charge upon the state. The board shall have power to take all necessary steps to secure from relatives and friends who are liable therefor, or who may be willing to assume the cost of support of any person supported by the state, reimbursement, in whole or in part, of the money so expended. The board may fix the rate to be paid for the support of a person by his committee or by relatives liable for such support, or by those not liable for such support, but willing to assume the cost thereof; but such rate shall be sufficient where possible to cover a

proper proportion of the cost of maintenance and of necessary repairs and improvements."

By section 42 certain specific sections of the Kentucky Statutes, 1915, are repealed, as well as all other acts or parts of acts inconsistent with the act.

It is the contention of appellee that section 34 does not apply to the insane at all, but applies only to the poor or indigent, feeble-minded or epileptic persons, and even as applied to them, only authorizes the board to make contracts with the proper persons for their maintenance. It must be confessed that the question is not without difficulty, but many reasons have induced us to reach a contrary conclusion. In the first place, chapter 14 and chapter 54 relate to the same subject, are practically contemporaneous and should be construed together in determining their effect. Lambert v. Owensboro Public Library, 151 Ky. 725, 152 S. W. 802, Ann. Cas. 1915A, 180. It will be observed that section 1, chapter 14, fixes the annual per capita appropriation for the years 1918 and 1919, and until June 30, 1920, at the sum of $190.00 per annum, while section 3 makes the rate for pay patients the same. Though section 3 does not in terms provide that the rate for pay patients shall end on June 30, 1920, we think that such was the intention of the legislature, in view of the settled policy of the state to make the rate for pay patients the same as that allowed by the state for pauper patients. Holburn v. Pfanmiller, 114 Ky. 831, 71 S. W. 940. Therefore, unless we hold that section 34, chapter 54, authorized the Board of Charities and Corrections to fix the rate that may be charged for pay patients, then there is no statute on the subject. Not only so, but the language of that section was broad enough to cover persons other than feeble-minded or epileptics. It is true that the section first provides that all poor or indigent feeble-minded or epileptic persons shall be wholly supported by the state, but in the next sentence it provides that the cost necessarily incurred in the transfer of "such persons" shall be a charge upon the state. In the subsequent provisions of the section, there is no reference whatever to "such persons." On the contrary, the board is given the power to take all necessary steps to secure from relatives and friends who are liable therefor, or who may be willing to accept the cost of support of "*any person* supported

by the state," etc. Furthermore, the concluding paragraph of the section is as follows:

"The board may fix the rate to be paid for the support of a person by his committee or by relatives liable for such support, or by those not liable for such support, but willing to assume the cost thereof; but such rate shall be sufficient where possible to cover a proper proportion of the cost of maintenance and of necessary repairs and improvements."

The above paragraph contains no language showing the power was restricted to persons other than the insane. Therefore when we take into consideration the fact that the $190.00 rate would expire on June 30, 1920, and the presumption that the legislature did not intend to discriminate between the different classes of inmates, we conclude that section 34 was intended to deal with the whole subject of pay patients and to authorize the board to fix a rate on the basis therein provided not only for feeble-minded and epileptic persons, but for the insane as well.

The denial that the charge made by the board was reasonable did not impose on the board the duty of establishing the reasonableness of the charge. The board was empowered by the law to determine the charge. The presumption is that it did its duty, and its finding is conclusive in the absence of allegation and proof that it acted corruptly, arbitrarily or by mistake.

There is no merit in the contention that the action of the board in raising the rate was invalid on the ground that it impaired the implied contract between the intestate and the state that the state would maintain him at the rate then in force so long as he remained in the hospital. Whether the state will maintain asylums, and whether it will charge this rate or that, are matters which the state alone has the power to decide. Therefore, when a patient enters one of the institutions, he enters subject to the right of the state to abolish the institution if it so decides, or to change the charge for his maintenance at any time it sees fit to do so.

Another contention is that the statute of limitations was not properly pleaded. It is conceded that the limitation period is five years, but insisted that the statute does not begin to run until the property is acquired, section 257, Kentucky Statutes, and that the answer did not allege that the suit was brought more than five years

after the property was acquired. In view of the allegations of the petition that at all times that the intestate was a patient and inmate of the institution he had sufficient estate to pay and compensate said institution for his maintenance and support, we conclude that the failure of the answer to allege when the property was acquired was not fatal to the plea of limitations.

Judgment reversed and cause remanded with directions to enter judgment in conformity with this opinion.

Whole court sitting.