STATE v. THOMPSON
(No. 1778; Feb. 1, 1933; 18 Pac. (2d) 619)

For the defendant and appellant there was a brief by *Thomas O. Miller*, of Lusk, Wyoming, *Durham & Bacheller*, of Casper, Wyoming, and oral arguments by *Mr. Miller* and *Mr. Bacheller*.

352

For the plaintiff and respondent there was a brief by *James A. Greenwood,* Attorney General; *Richard J. Jackson,* Deputy Attorney General; *George W. Ferguson,* Assistant Attorney General; *R. Dwight Wallace,* Assistant Attorney General, all of Cheyenne, Wyoming, and oral argument by *Mr. Ferguson.*

RINER, Justice.

This case brings a judgment of the District Court of Niobrara County here for review by direct appeal. The action below was one instituted by the State of Wyoming, as plaintiff, to recover from the defendant Arthur Thompson, as administrator of the estate of Thea Thompson, deceased, an amount of money alleged to be due the plaintiff on account of the care and maintenance furnished the said Thea Thompson in the Wyoming State Hospital at Evanston in this state.

Plaintiff's petition, omitting formal parts and briefly summarized, states that Thea Thompson was, during the month of May, 1923, committed by the District Court to said Hospital as an insane person, being received in that

354

institution as a patient on May 10, 1923; that at that time she had an estate consisting of a farm homestead and, while she was a patient in said Hospital, she inherited certain other property, all of which at the date of her death, after payment of claims and expenses of administration, was of a value not less than $3108.87; that she was a single person without dependents; that the reasonable and established value for her care and maintenance in said Hospital was the sum of $25 per month and that the total amount due therefor is $2108.87. Timely presentation of this claim to the defendant administrator is averred and the rejection thereof by him on May 4, 1931. Judgment was prayed in the sum last above mentioned.

Defendant's answer, while admitting the allegations of the petition relative to Thea Thompson's commitment to the state institution aforesaid and her inheritance of certain property, denied that the reasonable and established value for her care and maintenance was as charged, and denied any liability or indebtedness to plaintiff whatsoever. The answer also stated that, in the proceedings had in the District Court relative to her sanity, it was found by the jury that her estate then consisted of 320 acres of land of the value of $480; that defendant was at that time appointed her guardian, that he qualified and remained as such officer until his discharge by the court, July 9, 1930; that Thea Thompson was committed to the Wyoming State Hospital as a state patient and that she remained as such until her death on May 21, 1930, no sum having ever been ordered by the court to be paid out of her estate for her support. It was also alleged that no charge was ever made against her estate or any claim presented to said guardian during the ward's lifetime by the Wyoming State Board of Charities and Reform. A reply denying the allegations of the answer, other than its admissions, was filed by the plaintiff.

The case was tried to the court without a jury with the result that the plaintiff was given a judgment for $1955.85 including costs, subject, however, to a "statutory exemption of $1000, expenses of administration, attorney fees, court costs, and all preferred claims."

The first point urged in criticism of the judgment is that the petition fails to state a cause of action because it neglects to allege a presentation of the claim in suit to the guardian of Thea Thompson prior to her death and its disallowance by such officer, the claim being presented only to the defendant as administrator of her estate, and subsequent to her death. This position is taken in reliance on those provisions of Sec. 56-127, Wyo. Rev. St. 1931, reading:

"Provided, that when a person who has been supported at public expense at the state hospital is later found to have an estate in excess of the above exemptions, which is not required for the support of his dependents, the amount of the expense incurred by the state for his care and maintenance shall be charged against and collected from his estate, and shall be paid by the guardian of said estate to the state board of charities and reform."

And also those of Sec. 50-204, Wyo. Rev. St. 1931, which read:

"When a guardian has advanced, for the necessary maintenance, support or education of his ward, an amount not disproportionate to the value of his estate or his condition of life, and the same is made to appear to the satisfaction of the court or judge by proper vouchers and proofs, the guardian must be allowed credit therefor in his settlements."

It is also said that the case of Delfelder v. Farmers' State Bank of Riverton, 38 Wyo. 481, 269 P. 418, 270 Pac. 1081, is in point. We do not think so. There, it was held that the failure in a petition to allege therein a presentation

of a claim to an executrix and its rejection by her was such a serious defect in a pleading seeking recovery on the claim as to permit of its being raised in this court for the first time on appeal. The statutes which made it necessary to reach such a conclusion were sections 6891, 6895, and 6897 of the Wyoming Comp. St. 1920. No provisions of this character appear in the law of this state, governing the legal relationship of guardian and ward. We are not inclined to think that because the excerpt from Sec. 56-127, supra, directs that the expense incurred by the state for the care of an insane ward shall be charged and collected from his estate and paid by the guardian thereof to the State Board of Charities and Reform, this means that, if a claim is not so disposed of, the claimant has lost it and may not present it to the administrator of the estate on the ward's death or to the ward himself in the event he is restored to sanity, and thus recover the same. Our view of this matter is not altered, either, by an examination of the provisions of Sec. 50-204 above given. To reach the conclusion urged by the defendant on this contention, we would be obliged to read language into these statutes which they do not possess, something we may not do. As it seems to us, their provisions are neither those of limitation nor exclusive in character.

In 4 Bancroft's Probate Practice 2135, the text citing California and Oregon cases, says:

"In most of the states there is no provision for the presentation of creditors' claims to a guardian, and in the absence of such requirement no formal claim need be presented, or if presented it need not be verified or approved by the court before payment may be made."

See also, 32 C. J. 713, § 450; 767, § 578.

The relationship of guardian and ward presents quite a different situation from that existing in the case of the personal representative of a deceased person. In the

former, the purpose of the proceeding is to conserve the property of the ward, suitably to maintain him and ultimately to turn it over to him when he arrives at full age or recovers his sanity, or, in the event of his death, to his personal representative. The ownership of the property does not change. But the proceedings in which the personal representative officiates contemplate the passing of title to property to others. So, it has been held in a number of jurisdictions, where one has a valid claim against the guardian of an insane ward, if the ward dies before payment, the claim may be properly presented for allowance in the proceedings for the administration of his estate. See Mathews v. Mires, 135 Minn. 94, 160 N. W. 187, L. R. A. 1917b, 676; Eisenhower v. Vaughn, 95 Wash. 256, 163 P. 758; Reando v. Misplay, 90 Mo. 251, 2 S. W. 405, 59 Am. Rep. 13; Carter v. Beckwith, 128 N. Y. 312, 28 N. E. 582; Masters v. Jones, 158 Ind. 647, 64 N. E. 213.

It is said that "if plaintiff is entitled to recover any amount, it is confined to the period following June 30, 1929." This date is the one fixed by the state legislature in Ch. 155, Laws of Wyoming, 1929, when that chapter should become operative, Sec. 56-127, supra, a portion of which has been quoted above, being brought into the statute law of this state as Sec. 10 of that chapter. Much is presented in the briefs of counsel on the subject of whether this section of the statute should be regarded as having retroactive effect. But that is a matter we do not deem it required that we should discuss here, inasmuch as it appears that there were other sections of the statutes in force during the period between the 10th day of May, 1923, the date when Thea Thompson entered the Wyoming State Hospital, and June 30, 1929, which, as we think, bear directly upon the facts of this case with controlling force. Sec. 537 of Wyo. Comp. St. 1920, provided:

"If any insane person be admitted into the state insane asylum as a patient, the guardian shall pay for his support and expenses at such asylum, out of the estate of such ward; and if such insane person shall, at any time come under the class of 'insane poor persons,' as specified in the law for the government of the state insane asylum and the care of the insane, such person shall be supported and maintained at such asylum."

And Sec. 512 of the same compilation (now Sec. 56-103, Wyo. Rev. St., 1931) reads:

"Paying patients, whose friends offer and will pay, or who have property to pay their expenses, shall be admitted to the insane asylum, according to the terms directed by the state board of charities and reform; but the insane poor shall, in all respects, receive the same medical care and treatment, and be given wholesome food, as is given to paying patients."

While these sections of the law are not discussed by counsel, appellant in his brief, refers to Sec. 517, Wyo. Comp. St., 1920, which, after enacting that the estate of an insane person should be entitled to the same exemptions as to his creditors and for the expenses of his care while insane as are provided by law in the case of the estate of decedents which shall be set aside for his family or for himself, further directs:

"The balance of his estate, if any, may be used under the direction of the court or judge for the care of such insane person or his family, if he have one, in such proportions as may be ordered until the same is exhausted. After that he shall be supported and cared for at public expense as provided by law for insane persons, until his death, or disability is removed."

Concerning the effect of this statute, appellant concedes that "by implication, his estate over and above exemptions should be chargeable with his care and maintenance in the State Hospital for the Insane." It is certainly true

that all of these three sections of the statutes as collected in the compilation of 1920, disclose a clear intention on the part of the legislature to make the estate of an insane person liable to the state for his care and maintenance in the institution provided by it for that purpose. When the first sentence of Section 537 is examined, it seems equally plain and that, too, without any necessity of resorting to implication, that the law imposed a positive duty upon a guardian of an insane ward to "pay for his support and expenses at such asylum, out of the estate of such ward." This mandate in the law is broad and unlimited in its scope. It does not confine the duty of the guardian to pay for such expense to such estate as he had at the time commitment of the ward was made or at any other particular time. It appears to cover all his expenses at the asylum, whenever incurred. It seems to us to impose an absolute liability on the guardian to pay for his ward's support and asylum expenses whenever he has estate in his hands to meet those charges. The correlative right on the part of the state to enforce such claim necessarily exists.

The case of Monroe County v. Angle's Estate, 183 Wis. 648, 198 N. W. 851, relied on by appellant, hardly touches the case here for there the law involved, by its express terms, limited recovery by those furnishing support to the insane person to the property owned by him "at the time of receiving such relief, support or maintenance."

32 C. J. 689, discussing the subject of the liability of estates of insane persons to respond to institutional expense for their care, says: "Ordinarily the liability extends to include property acquired subsequent to the time the expenses were incurred."

Where a Vermont statute provided that, "Whenever any insane person, now or hereafter supported at the expense of the state, in any asylum for the insane in this state, had, at the time of commitment to such asylum, or

after his or her commitment shall have, or own or possess any estate, real or personal, or any pension or annuity, the same shall be appropriated towards the support of such insane person in such asylum," in State v. Ikey's Estate, 84 Vt. 363, 79 Atl. 850, 852, Ann. Cas. 1913 A. 575, it appeared that an insane person was committed to the state hospital on Oct. 29, 1902, remaining there until his death on March 22, 1908. He left an estate of over $5000. The state presented for allowance by the commissioners on his estate a claim for his maintenance in the hospital. This claim was rejected and upon appeal and trial in the county court, the state had judgment. Affirming this on exceptions, the appellate court, among other things, said:

"That the Legislature has the power to make the property and estates of such wards of the state liable for their maintenance there can be no doubt. Legislation of this character is along the lines of the common law; the underlying principles are the same. Indeed, in Camden County v. Ritson, 68 N. J. Law 666, 54 Atl. 839, the court said the statute there under consideration charging the estates of insane persons with their maintenance was but declaring of that which was a fact at common law. And in Kentucky, where there is a statute essentially like the one before us, it has been held that, even though the judgment of the county court committing the lunatic was void, the asylum could recover against him on a *quantum meruit* for his keep; his board and treatment being regarded as necessaries. Hopper v. Eastern Ky. Lunatic Asylum, (Ky.) 85 S. W. 1187; Michaels v. Central Ky. Asylum, 118 Ky. 445, 81 S. W. 247.

"But, whether the substantive right be by the common law or by statute, a particular or new mode of enforcing it may be prescribed by legislative action.

"The views here expressed are in harmony with the holdings of the highest courts in other states where statutes of similar import were involved."

Citing many cases. See also State v. Romme, 93 Conn. 571, 107 Atl. 519; In re Arnold's Estate, 253 Pa. 517, 98 Atl. 701.

The construction we have thus felt impelled to place upon the law under which Thea Thompson entered the State Hospital is in harmony not only with the policy of the legislature of this commonwealth heretofore mentioned relative to this matter, but also with sound morals. There is no good reason apparent why an insane person, if he possesses a sufficient amount of property to do so, should not, at least in part, contribute to the cost of his support while confined in a public insane hospital created and maintained by the state and whereby it is sought to restore him to reason and return him to his family and friends as a useful citizen in the community once more. Shall it be said that the taxpayers of our state are to be compelled to pay entirely for the support of such persons and they be excused from contributing thereto although amply able to do so? This would be in direct violation of what the legislature unquestionably designed the rule should be; viz., that for one to become a proper subject to receive the benefit of public charity, he first must have reasonably exhausted all his own means of support. Then and then only, it is humane and just that, as an insane ward, he should be entitled to care and support at the state institution without legal claim that he should contribute to the expense thereof.

While it is true that both Sections 517 and 537, Wyo. Comp. St. 1920, were repealed by Ch. 155, Laws Wyo. 1929, supra, yet that did not operate to destroy the cause of action against the guardian for the insane ward's support at the Wyoming State Hospital, which had already arisen in favor of the state, under them. Sec. 4573, Wyo. Comp. St. 1920, now Sec. 112-104, Wyo. Rev. St. 1931, relating to the general construction of statutes, provides in part, "nor shall any repeal or amendment affect causes of such action, prosecutions or proceedings, existing at the time of such amendment or repeal, unless otherwise expressly provided in the amending or repealing act."

In view of the plain language of the statute, it cannot be successfully contended, either, that no liability arose as against the guardian and hence, as against the defendant administrator here, under Sec. 10 of Ch. 155 aforesaid, and that, as previously indicated, would appear to be also appellant's view in this matter.

It is contended that there was no proper proof of the expense incurred by the state in caring for Thea Thompson at the Wyoming State Hospital. The Assistant Secretary of the State Board of Charities and Reform, called as a witness for the plaintiff, testified over objection that, at a meeting of that board held April 7, 1896, it fixed a sum which should be charged for those who are able to pay for their care and maintenance in the Hospital aforesaid, the amount so fixed being the sum of $25 per month, and that this amount has never been changed. It is insisted that this ruling was error, it being said that the statute contemplates that the exact expense for the support and maintenance of the person whose estate is affected must be shown. We cannot agree with this contention. Sec. 512, Wyo. Comp. St. 1920, supra, (Wyo. Rev. St. 1931, Sec. 56-103) as already indicated, has never been repealed and, by it, the State Board of Charities and Reform has been given specific authority to fix the terms upon which patients "who have property to pay their expenses, shall be admitted to the State Hospital." We consider that the words "support and expenses at such asylum" in Sec. 537, Wyo. Comp. St. 1920, supra, and the phrase "expense incurred by the state," in Sec. 10, Ch. 155, Laws Wyo. 1929, (Wyo. Rev. St. 1931, Sec. 56-127) refer simply to the terms directed by said board on which persons who have estate which should respond to charges for care and maintenance, are admitted to the Wyoming State Hospital.

The case of Central State Hospital v. O'Donnell's Admr., 199 Ky. 708, 251 S. W. 961, was one brought by

the hospital against the administrator to recover for O'Donnell's maintenance while an inmate thereof. Subsequently, the State Board of Charities and Corrections was made a party plaintiff also. Recovery was sought for the period between February 26, 1910 and June 30, 1918, at the rate of $150 per annum, between July 1, 1918 and June 30, 1920, at $190 per annum, between July 1, 1920 and April 27, 1922, at $1.00 per day. The board had by its order changed the rates covering the several periods on which the claim was based. The statute provided:

"The board may fix the rate to be paid for the support of a person by his committee or by relatives liable for such support, or by those not liable for such support, but willing to assume the cost thereof; but such rate shall be sufficient where possible to cover a proper proportion of the cost of maintenance and of necessary repairs and improvements."

The court below allowed only a partial recovery. Reversing this judgment and discussing the right of the board to fix rates, and the effect thereof, the court said:

"The denial that the charge made by the board was reasonable did not impose on the board the duty of establishing the reasonableness of the charge. The board was empowered by the law to determine the charge. The presumption is that it did its duty, and its finding is conclusive, in the absence of allegation and proof that it acted corruptly, arbitrarily, or by mistake.
"There is no merit in the contention that the action of the board in raising the rate was invalid on the ground that it impaired the implied contract between the intestate and the state that the state would maintain him at the rate then in force so long as he remained in the hospital. Whether the state will maintain asylums, and whether it will charge this rate or that, are matters which the state alone has the power to decide. Therefore, when a patient enters one of the institutions, he enters subject to the right of the state to abolish the institution if it so decides, or to change the charge for his maintenance at any time it sees fit to do so."

In the case at bar, the State Board of Charities and Reform was and is given power to fix the terms on which patients, who have property to respond thereto, shall be received into the State Hospital. It did so and proof of the amount so fixed was properly made. A patient entering the Hospital necessarily came in under the provisions of law which make his property liable to respond for his support and maintenance in the institution at the rate determined by the board. The record fails to show that the amount thus established was arbitrary, unreasonable, or wrongfully or mistakenly fixed. In the absence of such a showing, we think the rate directed by the board should govern. That it was promulgated many years ago does not affect the matter. This court may take judicial notice that the cost of living, clothing, medical attendance, etc., was materially greater during the period between May 10, 1923 and May 21, 1930, the time during which Thea Thompson stayed in the Hospital, than in 1896 when the rate was established. This fact, of course, favors the defendant here. We do not think the legislature ever intended that the exact actual expense per patient in the State Hospital should be proven and recovery only permitted in case it was. Such a view, from the very nature of the matter, would necessitate proofs extremely difficult to formulate and might easily result in working grave injustice to the state.

Having reached the conclusion that the judgment of the District Court was proper, we are obliged to direct that an order be made affirming it.

*Affirmed.*

KIMBALL, C. J., and BLUME, J., concur.