[No. 27037. Department One. November 3, 1938.]

*In the Matter of* MINNIE RHODES, *an insane person.*

MILTON RHODES, *Appellant,* v. THE STATE OF WASHINGTON *et al., Respondents.*[1]

*Padden & Moriarty* and *Melvin T. Swanson,* for appellant.

*B. Gray Warner* and *Lloyd W. Shorett,* for respondents.

[1]Reported in 83 P. (2d) 896.

STEINERT, C. J.—This is a proceeding, instituted in the probate court, wherein petitioner seeks to be relieved of liability for the accrued expense incident to the care and maintenance of an insane relative formerly confined in a state hospital. After a hearing on the merits, the court made findings of fact from which it concluded that petitioner should be relieved of personal responsibility for such expense, and thereupon entered judgment releasing petitioner from all obligation to make payment thereof; the judgment, however, impressed upon certain real estate then owned by petitioner a first and paramount lien in favor of the state for the payment of the accrued cost of such maintenance. From the adverse portion of such judgment, petitioner has appealed.

In October, 1931, in a former proceeding brought in the probate court of King county, Mrs. Minnie C. Rhodes, mother of appellant, was adjudged to be an incompetent person, and Pacific National Bank was appointed guardian of her estate. Some months thereafter, in the same proceeding, Mrs. Rhodes was adjudged insane and was committed to the Western State Hospital. At the same time, and as part of the same proceeding, the court found that Mrs. Rhodes' estate was "financially responsible," and the guardian was therefore directed to pay to the state, for her care and maintenance, the sum of four dollars and fifty cents per week, as required by statute.

At the time of her commitment, Mrs. Rhodes owned an improved piece of real estate in the city of Seattle which was then yielding a rental of thirty dollars a month. From such income, the guardian paid the state the required weekly amount regularly for a period of nearly two years, or until it had paid a total sum of $432.06. Owing to the depression, however, the property was not continuously tenanted, and the

rental was accordingly reduced from time to time until it amounted to only fifteen dollars a month, which was barely sufficient to pay the taxes, insurance, repairs, and costs of administration. As a result, the guardian ceased to make payments to the state on March 25, 1933.

Mrs. Rhodes died while at the hospital, on December 3, 1936, at which time there was an unpaid balance of $901.38 owing the state for her care and maintenance. Mrs. Rhodes left a nonintervention will, in which her son Milton B. Rhodes, appellant herein, was named executor. In her will, she bequeathed $104 to a stepson, and devised the remainder of the estate to appellant. By virtue of the will, the real estate involved in this action became appellant's property.

In due time, the executor filed an inventory listing the property of the estate. The real estate above mentioned was subsequently appraised at two thousand dollars. Notice to creditors was duly published. After the expiration of the time for filing claims against the deceased's estate, the state, through its department of finance, budget, and business, presented to, and filed with, the executor its claim for $901.38 for the care and maintenance of Mrs. Rhodes while at the state hospital. The claim was rejected on the ground that it was not timely filed. No further action was thereafter taken by the state on the rejected claim. Subsequently, however, the department notified the appellant herein to pay the sum of $901.38 for the previous maintenance of his mother at the state hospital. It was this notification that prompted appellant to file his petition for relief.

Appellant lives with his wife on the premises referred to above. His earnings amount to about eighty-two dollars a month. His living expenses equal his income. He has no property other than the real estate

mentioned, and he is in debt in excess of a thousand dollars.

Upon these facts, the court relieved appellant of personal liability for the amount claimed by the state for the maintenance of his mother, but awarded the state a lien to the extent of $901.38 upon the real estate now owned by appellant.

■ The state concedes that, because of its failure to file a claim in time, it has, at present, no valid claim against the estate of Minnie C. Rhodes, deceased. The statute of nonclaim, Rem. Rev. Stat., § 1477 [P. C. § 9828], applies to all claims, including those of the state, against decedents' estates, and since the state failed to comply with the statute, its claim is barred. This rule, frequently declared, has been followed in a case resting upon facts very similar to those presently before us. *State v. Evans*, 143 Wash. 449, 255 Pac. 1035, 53 A. L. R. 564.

The state, now seeking reimbursement from appellant for the amount of its bill, relies upon Rem. Rev. Stat., § 6930 [P. C. § 2827]. That section provides that, when a person is adjudged insane and is committed to a state hospital, the court, at the time, and as part, of such proceeding, shall summon the guardian, if any, also the relatives of such insane person, "to wit husband or wife, parents, children or other interested persons," to appear in court to be examined as witnesses for the purpose of determining the financial ability of the insane person, his estate or relatives, to pay the cost of maintaining and providing for the insane person while at such hospital. The statute then provides that findings of fact shall be made relative to the financial ability to pay such cost, and that judgment be entered against the proper party or estate so found responsible; and, further, that every insane person, his estate or relatives, found to have the financial ability

to pay such expense, shall pay therefor the sum of four dollars and fifty cents a week during the time that such insane person is committed to a state hospital.

It is apparent that Rem. Rev. Stat., § 6930, contemplates that, as between the insane person or his estate on the one hand, and his relatives on the other, the primary liability for the care and maintenance of the insane person rests upon such person himself or his estate, and that the liability of his relatives, as designated in the statute, is only secondary. We are clearly of the view that, when the court in such proceeding makes a finding and enters judgment against an insane person or his estate for the cost of his maintenance, his relatives cannot be held liable therefor so long as the estate is sufficient to meet such expense.

It will be observed that the statute prescribes a method for ascertaining and determining the financial ability of the insane person or his estate, or that of his relatives, to pay the cost of maintaining such insane person in a state hospital; also, that, when such financial ability has been determined, judgment shall be entered against the proper party so found responsible; further, that every insane person, his estate or relatives, as above set forth, found to have financial ability, shall pay the state the sum of four dollars and fifty cents per week for the maintenance of such insane person. The statute not only designates the person upon whom, generally and as a whole, rests the liability for the maintenance of insane persons, but also outlines the procedure for determining which of such persons, in a particular case, shall bear the cost of such maintenance. When judgment is thus imposed, it specifies the person who is to be held liable and who shall thereafter pay the cost of maintaining the insane person in a state hospital. Such judgment binds the

person designated therein to make such payments from that time on until the court makes some other or further provision in the premises. Necessarily, those who are not designated in the judgment as being liable are not to be held until or unless the court, upon a further hearing, definitely imposes liability upon them.

It is apparent from our statement of the case that, at the time that Mrs. Rhodes was committed to the state hospital, her estate was financially responsible, and that it would at all times have been ample to pay all the expenses incident to her care and maintenance if the state had taken proper steps to enforce payment during her lifetime or else, upon her death, had filed its claim in compliance with Rem. Rev. Stat., § 1477. We may also observe that the state is afforded an added protection by Rem. Rev. Stat., § 6930-1 [P. C. § 2827-1], which permits the court to require of the guardian or relatives a surety bond conditioned for the payment of the amount designated in the judgment.

It is also apparent that, in pursuance of the procedure prescribed by Rem. Rev. Stat. § 6930, the court, in the former proceeding, found, as a fact, that the estate of Mrs. Rhodes, then insane, was financially responsible, and for that reason directed the guardian to pay the expense. The court did not, however, in that proceeding, find, nor has it ever found, that appellant was financially responsible for the care and maintenance of Mrs. Rhodes, his mother, or that he should bear the cost thereof. The insane person and her existing estate were the only person and entity ever found by the court, during the lifetime of Mrs. Rhodes, to be liable for her maintenance. During that period, therefore, the liability for such maintenance was solely that of the insane person and her existing estate.

Upon the death of Mrs. Rhodes, the state could look only to the decedent's estate for the collection of its bill; it could not look to appellant, who had never been adjudged liable for such maintenance. But, as we have seen, the state failed to perfect its claim against the estate of Mrs. Rhodes, deceased.

The fact that appellant has inherited real estate from his mother is immaterial. If there be no personal liability on the part of appellant, as the trial court in the present proceeding held, there can be no lien imposed upon appellant's property for a debt for which he is not liable.

The judgment is reversed to the extent that it imposes a lien upon appellant's property.

HOLCOMB, MAIN, BLAKE, and ROBINSON, JJ., concur.