**STATE of Wyoming ex rel. STATE BOARD OF CHARITIES & REFORM, Appellant (Plaintiff below),**

v.

**Vernon E. BOWER, Administrator of the Estate of Daisy Wilkinson, Deceased, Appellee (Defendant below).**

No. 2984.

Supreme Court of Wyoming.

June 13, 1961.

Rehearing Denied July 18, 1961.

See 363 P.2d 791.

W. M. Haight, Deputy Atty. Gen., and Sterling A. Case, Asst. Atty. Gen., for appellant.

Elmer J. Scott, Worland, for appellee.

Before BLUME, C. J., and PARKER, HARNSBERGER, and McINTYRE, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

The State of Wyoming appeals from a summary judgment of the district court rejecting an alleged creditor's claim of its Wyoming State Hospital against the defendant as administrator of the estate of Daisy Wilkinson, deceased.

In substance the State's complaint alleged Daisy Wilkinson was committed to the Wyoming State Hospital as an insane

person during the month of July, 1918, and was received and kept in that State institution at public expense until June 3, 1957, on which date she died; that the reasonable, customary and established value of her care and maintenance amounted to $12,001.35, for which her estate was indebted to the State of Wyoming; that at the date of her commitment her married name was Daisy Johnston and she was possessed of property which at the date of her death was of the value of not less than $10,000; that Daisy Wilkinson was without dependents or descendants; that on July 19, 1957, an itemized claim in behalf of the State of Wyoming in the amount of $13,-501.35 was filed with the clerk of the court in which the complaint was filed; that on October 26, 1959, a corrected claim was filed in the matter of the estate of Daisy Wilkinson, deceased, in the probate records of the same court; that by reason of the care and maintenance of Daisy Wilkinson in the Wyoming State Hospital and the filing of the claim and the corrected claim which was rejected and disallowed in writing on December 31, 1959, the deceased's administrator is indebted to the State in the sum of $12,001.35, less statutory exemption of $3,000, leaving a net amount due the State of $9,001.35.

The defendant administrator's answer admitted the formal parts of the complaint, but denied the balance of its allegations; then alleged that the complaint failed to state a claim upon which relief could be granted; that the creditor's claim filed October 26, 1959, was presented to the guardian of the estate of Daisy Wilkinson, rather than to the administrator of her estate as is required by § 2-227, W.S.1957; that the creditor's claim filed October 26, 1959, was not filed within the time required by § 2-219, W.S.1957; that the creditor's claim was not properly verified as required by § 2-222, W.S.1957; that the creditor's claim is barred by provisions of § 2-104, W.S.1957, because not properly filed or presented within two years from May 3, 1957, (which date should be June 3, 1957) the date of decedent's death; and that

Daisy Wilkinson was committed to the Wyoming State Hospital as a State patient and not as a pay patient.

Defendant then filed motion for summary judgment, and asked the court to take judicial notice of all files in the office of the clerk of court of the county in which the action was pending pertaining to the commitment to the Wyoming State Hospital of Daisy Johnston, also known as Daisy Wilkinson, the guardianship proceedings respecting Daisy Johnston, or Daisy Wilkinson, an incompetent person, and all proceedings in the estate of Daisy Wilkinson.

The affidavit of the business manager of the Wyoming State Hospital, as to the reasonableness of that institution's charges, also appears in the file.

In addition, a Stipulation and Agreed Statement of Facts was filed. This instrument recited that the files of both the probate and the guardianship matters concerned with Daisy Johnston, otherwise known as Daisy Wilkinson, deceased, are part of the record in the case, and that the material facts are not in dispute and are substantially as follows:

1. This action is brought in the name of the State in behalf of its State Board of Charities and Reform.

2. The defendant is the duly appointed, qualified, and acting Administrator of the Estate of Daisy Wilkinson, Deceased.

3. The decedent on August 5, 1918, was, upon verdict of a jury, committed by the court as an insane person to Wyoming State Hospital under her then married name of Daisy Johnston, and was received and remained at that hospital as a "state patient" and maintained at public expense until June 3, 1957, when she died without dependents or descendants; and the jury found that at the time of commitment she owned property of approximate value of $700.

4. On July 20, 1920, her husband, William G. Johnston, obtained an annulment of the marriage, the court awarding Daisy Wilkinson the home where the parties resided, as well as other real property, and

directed the husband to pay $2,000 to the wife's guardian.

5. L. E. Laird was appointed and qualified as such guardian on July 22, 1920, and served until June 2, 1955, when Vernon E. Bower was appointed as such guardian.

6. On January 14, 1959, probate proceedings in the name of the Estate of Daisy Wilkinson were instituted by the present administrator who is the defendant in this action.

7. At the date of decedent's death, the value of her estate was determined to be $12,899.04 cash, and two rings of the value of $5, a total of $12,904.04.

8. The heirs-at-law of the decedent are enumerated and set forth in the Final Account and Petition for Distribution of the deceased's estate, which final report is conceded to be correct.

9. On July 19, 1957, an itemized claim for $13,501.35 was filed with the clerk of the court in which this action was brought.

10. On October 26, 1959, a modified claim was filed in the probate records of this court and the amount of charges appearing in the claim are fair and reasonable.

11. On December 31, 1959 (which date should be December 30, 1959), the defendant administrator disallowed the State's claim.

The court sustained the defendant's motion and entered its judgment dismissing the complaint with prejudice, and the State appealed.

The appellant has designated all of the record and proceedings, including the Stipulation and Agreed Statement of Facts, and the complete files of both the probate and guardianship matters concerned with Daisy Johnston, otherwise known as Daisy Wilkinson, deceased, as the record on appeal.

Although all but the formal matters of the complaint were denied by defendant's answer, the Stipulation and Agreed Statement of Facts thereafter filed admitted their substance, and the allegations in the defendant's answer were not challenged by plaintiff.

The purported creditor's claim of July 19, 1957, together with what is said to be its verification, appears in an exhibit entitled, "In the Matter of the Estate and Guardianship of Daisy Wilkinson, an Insane Person. Probate No. 56", and is as follows:

"The State of Wyoming,      ss.      In District Court
County of Uinta      Third Judicial District

"In the Matter of the Estate of
Daisy Johnston     Creditor's Claim.
           Deceased.

"The undersigned, a creditor of Daisy Johnston deceased, present this claim against the Estate of said deceased, with the necessary vouchers for approval as follows, to-wit:

"Estate of Daisy Johnston, Deceased
To Wyoming State Hospital Dr.

"19           Items           $
   *   *   *   *   *   *   *   *   *   *   *
     [Itemization omitted. Only total shown.]      "$13,501.35

"The State of Wyoming,      ss.
County of Uinta

"Wyoming State Hospital whose foregoing claim is herewith presented to the Guardian of the Estate of said deceased being duly sworn, says the

amount thereof, to-wit: the sum of $13,501.35 is justly due to said claimant; that no payments have been made thereon which are not credited, and that there are no offsets to the same, to the knowledge of said affiant Wyoming State Hospital

> "[signed]   J. F. Whalen
> "Wyoming State Hospital
> "J. F. Whalen, M. D., Superintendent.

"Subscribed in my presence and sworn to before me this 12th day of July A. D. 1957

> "[signed]   Elizabeth N. Corless.
> "Notary Public

"My commission expires September 25, 1959.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

[Blanks omitted.]

"Filed July 19, 1957.

> "[signed]   E. M. Conant
> "Clerk of the District Court.
> "By [signed]   Margaret Hampton
> "Deputy Clerk."

What is represented as a corrected creditor's claim, dated October 26, 1959, appears in an exhibit entitled, "In the Matter of the Estate of Daisy Wilkinson, Deceased.   Probate No. 1110", as follows:

"The State of Wyoming, }
County of Washakie } ss.

In District Court

Fifth Judicial District

"In the Matter of the Estate of }
Daisy Wilkinson }
Deceased. }

Creditor's Claim

"The undersigned, a Creditor of Daisy Wilkinson deceased, present this claim against the Estate of said deceased, with the necessary vouchers for approval as follows, to-wit:

"Estate of Daisy Wilkinson, Deceased
To Wyoming State Hospital Dr.

"19                              Items                              $

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

[Itemization omitted.   Only balance total shown.]

"Total                    $12,001.35

"The State of Wyoming, }
County of Uinta } ss.

"Wyoming State Hospital whose foregoing claim is herewith presented to the Guardian of the Estate Daisy Wilkinson of said deceased being duly sworn, says the amount thereof, to-wit: the sum of Twelve thousand one dollars and thirty-five cents is justly due to said claimant; that no payments have been made thereon which are not credited, and that there are no offsets to the same, to the knowledge of said affiant Wyoming State Hospital

> "[signed]   William N. Karn, Jr., M. D.
> "William N. Karn, Jr., M. D., Superintendent

"Subscribed in my presence and sworn to before me this
20th day of October A. D. 1959

"[signed]    Thelma L. Lutj
"Notary

"My Commission Expires October 2, 1963

✿    *    *    *    *    *    *    *    *    *    *

[Blanks omitted.]

"The within claim rejected this 30th day of December, 1959.

"[signed]    Vernon E. Bower, Adm.

"Filed Oct. 26, 1959.

"[signed]    Margaret V. Hampton.
"Clerk of the District Court.

"By ---------------------------------
"Deputy Clerk."

---

In the same exhibit appears an Affidavit of Publication of notice to creditors showing publication of the same was made January 23, January 30, February 6, 1959, in which all persons having claims against the estate of the deceased were required to file them with necessary vouchers in the office of the clerk of the district court of Washakie County, Wyoming, or exhibit such claims with necessary vouchers to the administrator of the decedent's estate on or before the twenty-third day of July, 1959, or such claims would be forever barred.

The following Wyoming Statutes, 1957, are pertinent to appellant's contentions:

" § 2–219. *Publication of notice to creditors; claims to be filed, etc., within six months; unfiled claim barred.*—Every executor or administrator must, within ten days after his letters are issued, cause to be published, in some newspaper in the county, if there be one, if not, then in such newspaper as may be designated by the judge, or court, a notice to the creditors of the decedent, requiring all persons having claims against decedent to file them, with the necessary vouchers, in the office of the clerk of the court from which the letters were issued, or to exhibit them, with the necessary vouchers, to the executor or administrator, or to some competent person, at the place of his residence or business to be specified in the notice, provided, said residence or place of business shall be in the county in which said proceeding is had. Such notice must be published not less than once a week for three weeks. The time expressed in the notice must be six months after its first publication. Any claim not so filed or exhibited shall be barred."

"§ 2–221. *Time for filing or exhibiting claims; failure to file bars claim; exception.*—All claims whether the same be due, not due, or contingent, must be filed or exhibited within the time limited in the notice and any claim not so filed or exhibited is barred forever; provided, however, that when it it [is] made to appear by the affidavit of the claimant, to the satisfaction of the court, or a judge thereof, that the claimant had no notice as provided in this article, by reason of being out of the state, it may be filed and exhibited at any time before a decree of distribution is entered."

"§ 2–222. *Claims to be verified by affidavit; vouchers or proofs to support claim.*—Every claim which is due, when presented to the executor or administrator, must be supported by the affidavit of the claimant, or some

one in his behalf, that the account is justly due, that no payments have been made thereon which are not credited, and that there are no offsets to the same, to the knowledge of the affiant. If the claim be not due when presented, or be contingent, the particulars, of such claim must be stated. When the affidavit is made by a person other than the claimant, he must set forth in the affidavit the reason why it is not made by the claimant. The oath may be taken before any officer authorized to administer oaths. The executor or administrator may also require satisfactory vouchers or proofs to be produced in support of the claim."

Appellant argues that because the same individual was at one time the guardian of the estate of the insane during her lifetime, then following her death, became the administrator of her estate, the instrument dated July 19, 1957, titled "In the Matter of the Estate of Daisy Johnston, Deceased, In District Court, *Third* Judicial District, Creditor's Claim", sent by an official of the hospital to the clerk of the district court of the *Fifth* Judicial District and filed by that clerk "In the Matter of the Estate and Guardianship of Daisy Wilkinson, an Insane Person, Probate No. 56" not only constituted a claim against the estate of the ward during her lifetime, but that it excused compliance with § 2–219. As shown above, this section makes no exception in requiring claims against the estate of a deceased person be presented to the executor or administrator of the deceased's estate or filed with the clerk of the court from which letters issued. Nevertheless, appellant concludes the claimant was relieved from the provisions of § 2–221, which bars claims not timely filed. Seemingly, appellant would also have us ignore § 2–222, which provides that claims be supported by affidavit.

The guardian was finally discharged and the surety on his official bond released on March 27, 1958. This was almost ten months after the death of the ward. Furthermore, letters did not issue to the administrator until January 21, 1959, a date more than eighteen months after the deceased passed away. In consequence, there was no one in charge of the estate of the deceased for about ten months. There certainly was no continuity in the services of the individual as guardian and as administrator.

At all events, the most appellant suggests is that the administrator had knowledge of the State's claim. Counsel do not point out how or when this carry-over knowledge fixed the time of presentation of the claim to the administrator so as to start the running of the period after which the creditor was entitled to assume his claim had been rejected. Section 2–223, W.S.1957, provides:

"§ 2–223. *Allowance and rejection of claims.*—When a claim, accompanied by the affidavit required in this article, has been filed with the clerk, the executor or administrator must allow or reject it, and his allowance or rejection thereof must be in writing and filed with the clerk. When a claim, accompanied by the affidavit required in this article, is presented to the executor or administrator before filing, he must endorse thereon his allowance or rejection, with the day and date thereof. If he allow the claim so presented, it must within thirty days thereafter be filed with the clerk. If, where a claim has been filed without presentation, the executor or administrator refuse or neglect to file such allowance or rejection for ten days after he has received notice from the clerk of the court that the claim has been filed, or if, where a claim has been presented before filing, the executor or administrator refuse or neglect to indorse such allowance or rejection for ten days after the claim has been presented to him, such refusal or neglect may, at the option of the claimant, be deemed equivalent to a rejection on the tenth day; and if the presentation be made before filing, by a notary, the certificate of such notary, under seal, shall be prima facie evidence of such presentation, and the date thereof. If the claim be filed with the clerk,

or presented to the executor or administrator, before the expiration of the time limited for the filing or presentation of claims, the same is filed or presented in time, though acted upon by the executor or administrator, after the expiration of such time. If the claim be payable in a particular kind of money or currency, it shall, if allowed, be payable only in such money or currency. Every claim allowed by the executor or administrator and approved by the court shall be ranked among the acknowledged debts of the estate to be paid in due course of administration. The dates of allowance of every such claim, together with the amount allowed, must be entered in the proper book by the clerk after the allowance thereof. When a claim has been filed with the clerk or exhibited to the administrator or executor, and is rejected in whole or in part, the administrator or executor shall immediately, upon such rejection, notify the claimant by registered mail."

Obviously, there could be no action upon the claim until letters issued to the administrator, so the time for action by the administrator did not start on the date the July 19, 1957, claim was filed "In the Matter of the Estate and Guardianship of Daisy Wilkinson, an Insane Person." Neither is there anything in the record to indicate that the time for action by the administrator should commence to run from the day the administrator qualified or at any other day. To agree that the instrument dated July 19, 1957, was a proper creditor's claim against the estate of the deceased would, therefore, render ineffectual § 2–223. Section 2–227, W.S.1957, which prohibits actions upon creditor's claims without first presenting them to the executor or administrator would likewise be rendered useless.

It is also worthy of comment that although the July 19, 1957, instrument is advanced as being a sufficient creditor's claim filed in the estate of the deceased, it, in fact, falls far short of being so. The mere titling of an instrument "Creditor's Claim," on a form ordinarily used for presentation of creditor's claims against the estate of a deceased, does not establish it as being the type of claim required by our statutes to be presented to an administrator or to be filed with the clerk of the court in which the estate proceedings are pending. The contrary is made evident when the purported verification in the instrument shows it is intended to be presented to a *guardian* of the estate of a "Deceased". Furthermore, the portion of the instrument which may have been intended as the required verification is not made upon the oath of any one, for it states "Wyoming State Hospital" is being sworn upon oath, which is, of course, meaningless. Although there is a signature appended to this so-called verification, followed by "Subscribed in my presence and sworn to before me this 12th day of July A.D. 1957", and the signature of a notary public follows, there is at least some doubt if the officer of the hospital whose signature is so affixed, could be successfully prosecuted for perjury if a false swearing were charged. Also the words, "In District Court Third Judicial District," appear opposite the scilicet wherein "Uinta" County is named, rather than "Washakie" County, to whose clerk of court the instrument was sent and who filed the instrument "In the Matter of the Estate and Guardianship of Daisy Wilkinson, an Insane Person."

■ Although the matter is not of controlling importance in this case, we also note the complaint says the State's alleged claim, dated July 19, 1957, was filed with the clerk of the court in which the complaint was filed. This is not strictly accurate. The complaint in this action was filed in the civil arm of the district court, while the record shows the alleged claim was filed in the probate arm of the court. These two courts are not the same, as they function in different capacities and each possesses different powers within its separate jurisdiction. When the court performs one of its functions, its capacity, power and jurisdiction are entirely separate and distinct from those it possesses and exercises when acting in its other ca-

pacities. In Denver Joint Stock Land Bank of Denver v. Preston, 52 Wyo. 132, 140, 70 P.2d 584, 587, a mortgagee filed claim in the probate court for the deceased's debt to the mortgagee and upon rejection of the claim by the administratrix the mortgagee proceeded to foreclose by publication, then sued in a civil action to recover a deficiency. It was contended that when the mortgagee chose to present its claim to the administratrix in the probate court, the mortgagee was compelled to remain in that court. In other words, the mortgagee could not seek recovery of the deficiency in any court other than the probate court. The court said:

"* * * While the judge of the district court is also judge of the probate court, nevertheless there is a distinction between these courts. Church v. Quiner, 31 Wyo. 222, 224 P. 1073. * * *"

And in the cited case of Church v. Quiner, 31 Wyo. 222, 227, 224 P. 1073, 1074, the court said:

"* * * Where, as in Wyoming, the same court that has jurisdiction in probate has also general jurisdiction, the separation of its powers exercised in probate from those exercised in actions at law or in equity might at first seem the result of a merely technical rule of no practical importance; but when it is borne in mind that the court in probate having jurisdiction of the estate can for many purposes acquire jurisdiction of the persons interested in the estate without any actual notice to them, the substantial nature of the distinction, as well as the importance of maintaining it in practice, becomes clear. We deem it unnecessary to refer to other reasons for confining the probate jurisdiction to 'matters of probate,' as defined by law."

■ It might also be well to point out that the defendant's contention that the creditor's claim is barred by the provisions of § 2–104, W.S.1957, because not properly filed or presented within two years from May 3, 1957 (which date should be June 3, 1957), the date of decedent's death, is un-

sound. Section 2–103, W.S.1957, makes provision that:

"In case letters testamentary or of administration on the estate of a decedent shall not have been theretofore issued upon the request of any other person, any creditor of the decedent may apply for letters of administration at any time within two years after the death of decedent, but not afterwards. * * *"

Section 2–104 again says that:

"If such letters are not issued within the time hereinbefore specified, all claims of creditors shall be forever barred, * * *."

Inasmuch as letters of administration were issued January 21, 1959, which would be less than one year and eight months after the death of the decedent, neither § 2–103 nor § 2–104 applies.

■ While it has seemed advisable to recount with some particularity the many defects of the July 19, 1957, instrument which render it something less than a proper creditor's claim against the estate of the decedent, we believe it sufficient for the purposes of this appeal that we now merely hold it may not be considered as such a creditor's claim as is contemplated by §§ 2–219, 2–221 and 2–222, W.S.1957, because it was filed in a guardianship proceeding at a time when no letters of administration had issued in the matter of the estate of the deceased.

This holding, of course, disposes of any contention that the alleged October 26, 1959, creditor's claim, as a correction or modification of the July 19, 1957, claim, should be considered as having been filed within the time designated in the Notice to Creditors on or before which claims not filed would be forever barred.

We now consider the October 26, 1959, instrument, keeping in mind that it was also improperly made in the name of "Wyoming State Hospital Dr.", rather than in the name of the State of Wyoming. This claim was not filed until after more than three months had elapsed beyond the final date after

which the published statutory notice to the creditors warned all creditors that claims not filed would be barred. Also the verification was subject to the identical fault appearing in the verification of the July 19, 1957, instrument. However, while these defects in the preparation of the instrument are inexcusable and might well be considered fatal, we do not feel it necessary to hinge our decision solely upon them.

Appellant further contends that the late filing or presentation of the October 26, 1959, State's claim to the administrator of the estate of the deceased does not preclude the State from collecting the value of the cost of care and maintenance of the deceased from her estate in the hands of the administrator. In support of this position, appellant asserts the statute requiring such filing and presentation does not and was not intended by our legislature to apply to the State. Counsel seek to distinguish In re Peterson's Estate, 75 Wyo. 416, 296 P.2d 504, which held that failure of the United States to timely present its claim, as required by §§ 2–219 and 2–221, barred the government from effecting recovery of its debt in our State's probate proceedings, from the instant case, by pointing out that in the Peterson case the claim was made several years late and was made by the United States, whereas the State of Wyoming is now the claimant and the presentation was only some three months late. We find this contention entirely without merit. Neither the difference in the time of the belated filing nor the difference in which government asserts the claim would alter the conclusion reached in the Peterson case.

Appellant also says the State's right to reimbursement from the assets of the decedent's estate had already vested and points to § 25–14, W.S.1957, which says the care and maintenance of a person supported at public expense at the State hospital "shall be charged against and collected from his estate, and shall be paid by the guardian of said estate." And appellant evidently believes that when the hospital's superintendent complied with the provisions of § 25–24, W.S.1957, requiring notice of the death of a patient to be sent the clerk of the court wherein the commitment was had, a sufficient presentment for payment of the claim was given. Appellant seems to feel there is authority for its position in State v. Thompson, 45 Wyo. 350, 18 P.2d 619. But that case merely held that under the provisions of what is now § 25–14, W.S.1957, amounts due the State for the care and maintenance of a ward, which are to be charged against and collected from the ward's estate and paid by the guardian during the lifetime of the ward, may be charged against, collected from, and paid by the administrator of the estate of the ward after death. Such reasoning goes far afield from the issue in this case.

The question presented here is not whether the estate of a deceased person can be held liable by the State for the cost of care and maintenance of the deceased while a patient at the State hospital. It is whether the liability for that cost may be satisfied from the assets of the deceased without the State's observing the procedural conditions precedent which have been imposed by the State's own legislature. Had it been the legislative purpose to exempt the State from compliance with those precedent procedures, it might easily have done so. The failure to except the State from the barring provision of the statute makes necessary the plain implication that the lawmaking arm of the State's government did not intend that the State should be relieved of the requirement. The object of probate proceedings in connection with estates of deceased persons is to wind up the affairs of a decedent in an orderly manner and to make distribution of assets remaining to persons entitled as speedily as is practicable. To this end there must be finality to proceeding for the ascertainment of the deceased's liabilities. The statutes in question are purposed to that end. To ignore them makes it impossible to expeditiously accomplish the very objective for which probate is had. If the legislature did not see fit to say the door should be left open indefinitely for the State to come forward with its legitimate claim against the estate, it would be highly improper for this court to read into its statute an exception which

the enactment did not see fit to incorporate within it.

In State v. Drake, Ohio Com.Pl., 106 N. E.2d 91, 93, the court said:

"It must be concluded that the primary purpose of the Statute providing for the presenting of claims and bringing suit on rejected claims was to expedite the administrator [administration] of estates. If this purpose can be defeated by the delay of a branch of the state government, both in presenting a claim, and in bringing suit after the claim was rejected, then the legislative intent is unfulfilled."

And in Donnally v. Montgomery County Welfare Board, 200 Md. 534, 92 A.2d 354, 358, 34 A.L.R.2d 996, 1002, it was said:

"* * * The case of Division of Aid for the Aged in Dept. of Welfare v. Wargo, Ohio App., 73 N.E.2d 701, is precisely in point. It was there held that since the purpose of the non-claim statute was to facilitate the settlement of estates, it could only attain its object if it were held to be all inclusive and apply to all claims. The same purpose is implicit in the Maryland statute. Davis v. Winter, 172 Md. 341, 348, 191 A. 902. In Bahr v. Zahm, 219 Ind. 297, 37 N.E.2d 942, 944, the court said: 'It seems to us that the difference between the statutes here involved is basic. The non-claim statute relates to the exercise of a right, while the statute relieving the state from the operation of statutes of limitation pertains only to remedies. The non-claim statute imposes a condition precedent to the enforcement of a right of action, while statutes of limitation create defenses that must be pleaded and may be waived. We do not know of any statute or rule of law that relieves the state of Indiana from the obligation to perform conditions precedent upon which the enforcement of a right of action is made to depend.' To the same effect see State v. Evans, 143 Wash. 449, 255 P. 1035, 53 A.L.R. 564; Rhodes v. State, 196 Wash. 618, 83 P.2d 896; In re Peers' Estate, 234 Iowa 403,

12 N.W.2d 894 and People v. Osgood, 104 Cal.App. 133, 285 P. 753. See also In re Bird's Estate, 410 Ill. 390, 102 N.E.2d 329, recognizing the distinction between a non-claim statute and a statute of limitations, as applied to a state. And see note 53 A.L.R. 569. * * *"

See Annotation, 34 A.L.R.2d 1003.

Finally, appellant insists the summary judgment in this case violates Art. 3, § 40, Wyoming Constitution, which provides:

"§ 40. *Debts to state or municipal corporation cannot be released.*—No obligation or liability of any person, association or corporation, held or owned by the state, or any municipal corporation therein, shall ever be exchanged, transferred, remitted, released or postponed, or in any way diminished by the legislature; nor shall such liability or obligation be extinguished, except by the payment thereof into the proper treasury."

■■ In the effort to convince us of the correctness of this contention, counsel rely entirely upon the holding of the New Mexico court In re Bogert's Will, 64 N.M. 438, 329 P.2d 1023, 1027. Both the statutory requirement for filing of claims against estates of decedents and the applicable constitutional provision of New Mexico are substantially the same as those in Wyoming. In arriving at its conclusion that its non-claim statute did not operate against its state board because that would violate New Mexico's constitution, the court accepted the following reasoning suggested by counsel:

"'Here, indeed, is the dilemma. If the statute merely bars the remedy, like any statute of limitations, the State is not subject to the bar thereof, under the rule of the Boyd case, supra. [Directors of Insane Asylum of New Mexico v. Boyd, 37 N.M. 36, 17 P.2d 358]

"'If the statute destroys the right, and so is more than an ordinary statute of limitations—as Appellee squarely contends—then, clearly, the statute violates Article IV, Sec. 32 of the Con-

stitution of New Mexico, as applied to the sovereign.' "

This holding takes no account of what we believe is the applicable controlling principle here. Whatever claim the State of Wyoming possesses arose solely by virtue of its legislative action in enacting § 25–14, W.S.1957, and the decision of this court in State v. Thompson, 45 Wyo. 350, 18 P.2d 619. This being so, the legislature may not only repeal that statutory act, but may also circumscribe the enjoyment of the right it created as it sees fit, without infringing the Constitution. The fact is that § 25–14, granting the State the right to recover the cost of care and maintenance of an insane, from his or her estate, was not enacted until 1929, at which time the statutes fixing the time within which creditor's claims must be filed and presented or be forever barred had long been in force. It, therefore, clearly appears that the legislative act must be interpreted in the light of the existing law and be subject to such laws prescribing the procedures necessary to be followed in the assertion of the statutory right. We feel the position taken by the Alabama court in State v. Crocker's Estate, 38 Ala.App. 306, 83 So.2d 261, and in cases cited therein, holding the nonclaim statutes to be constitutional and barring recovery by the state, to better express the law than does the New Mexico decision.

In connection with the appellant's charge of unconstitutionality, counsel inform us that a "search of the Wyoming substantive law for a case in point with the one at bar discloses there has never been a cause similar to the instant one before this Court for determination." Although this is substantially the fact, yet we do have two decisions of this court relating to statutes which were claimed to have violated Art. 3, § 40, of our Constitution.

In State v. Foster, 5 Wyo. 199, 38 P. 926, 29 L.R.A. 226, 63 Am.St.Rep. 47, it was held a Territorial Assignment Law, insofar as it compelled release of a creditor's claim in full upon acceptance of a final dividend from an insolvent estate, did not apply to the State, because it was repugnant to Art.

3, § 40, Wyoming Constitution. However, in State ex rel. Wilson v. Young, 44 Wyo. 6, 21, 7 P.2d 216, 221, 81 A.L.R. 114, 122, where a compromise of the State's claim for an inheritance tax was alleged to be unconstitutional, this court said, "Before it can be said that any part of a liability or obligation has been released, the amount thereof must be known," and concluded that the action of the Attorney General in compromising the State's claim did not violate the Constitution of this State. From this latter pronouncement, it would seem that the summary judgment rendered in compliance with §§ 2–219 and 2–221, W.S.1957, failed to violate Art. 3, § 40, Wyoming Constitution, because no debt due the State has yet been ascertained.

Having considered appellant's various objections to the judgment rendered and finding them to be insufficient, the summary judgment appealed from must be and is affirmed.

Affirmed.