GILBERT YARBOROUGH, ADM'R, v. WILLIAM D. LEGGETT AND ANOTHER.

Arbitration is not a proper mode for the establishment of a rejected claim against an estate.

Appeal from Wood.

*Bowden & Chilton*, for appellant.

HEMPHILL, CH. J.   The appellees, being plaintiffs in the Court below, sued the appellant, (defendant below,) as administrator of D. Adams, deceased, for judgment on a claim of five hundred and thirty-one dollars, against the estate of the deceased, which had been presented to, and rejected by, the administrator, on the 28th October, 1853.   On the day of filing the petition, viz: the 31st January, 1854, the parties entered into an agreement for arbitration, under the Act of the 25th April, 1846, stipulating that the award of the arbitrators should be final.   The arbitrators awarded the full amount of the account claimed by the plaintiffs, viz: the sum of five hundred and thirty-one dollars.   This award was made the judgment of the Court at its next Term, with the usual order, that it be paid in the due course of administration.   The defendant moved to set the

award and judgment aside, on several grounds, viz : 1st. That the agreement to arbitrate was not entered into by parties having competent authority for that purpose, the same having been executed by attorney for the plaintiffs on the one part, and by an administrator on the other. It was also set up, that the defendant, at the arbitration of the said cause, pleaded the Statute of Limitations to the account, but the same was disregarded by the arbitrators, and that in fact the said account was barred long before said arbitration. This motion was refused and the defendant appealed.

The first ground of the motion raises the question, whether an administrator has competent authority, under our law, to submit claims touching the estate to arbitration, and especially with the stipulation that the award shall be without appeal. There is no doubt that at Common Law, an executor or administrator may submit claims, for or against an estate, to arbitration. But this was at the peril of the administrator, for if a less sum was awarded to him than he could have recovered at law, the award, as being the result of his voluntary act, was personally binding on him, but he was answerable for the deficiency, to the heirs and others interested in the estate. (4 Bacon, Ex'ors, L. 1 ; 6 Pickering, 269 ; 2 Williams on Ex'ors, 1534 ; Wentworth, Off. Ex'ors, 304.) Again, if he submitted generally, without protest that the reference was not to be taken as an admission of assets, he was personally bound to perform the award, whether he had assets of the estate or not. (5 Term R. 7 ; 1 Id. 691 ; 7 Id. 453 ; 2 Wms. on Ex'ors, p. 1520.) The mode of settling disputes, by arbitration, is favored by our law—so much so, as to have been specially enjoined by the Constitution, and it would certainly be a grievance, that an administrator, if authorized by law to submit claims due the estate to arbitration, should be held responsible for the deficiency, if a greater sum than that awarded, were really due. It would be very doubtful whether, under such a Statute as ours, on the subject of arbitration, an administra-

Yarborough v. Leggett.

tor could be held thus responsible for submitting to arbitrate, in proper cases, and under proper terms, claims affecting the estate.

But there is so wide a difference between the powers of an administrator, under the Statute, and at Common Law, and also in the mode of establishing and paying claims against an estate, in the two systems, that it would seem that an administrator has not authority to make such submission, at least when the claims are against the estate, and especially when the submission is without appeal, independently of another view which will be adverted to, that this is not the mode which, in fact, is prescribed, for the establishment of claims against an estate.

It is obvious that the administrator, at Common Law, acts in a double capacity, binding not only the estate but his own property, to the satisfaction of the creditor, unless there be extreme caution in the terms of the submission. This is a strong inducement to zeal and fidelity on the part of the administrator, to prevent unfounded claims, which, by possibility, might be levied upon his own effects. But no such result would follow the award under our laws. It would be payable, as other claims, in the due course of administration; and, whether the estate had assets or not, could in no possible event affect the administrator. Again, the administrator would be personally responsible, at Common Law, if the award were not for the full amount of the debt really due; and on the like principle, he should be liable for an unfounded claim, if established against the estate, by an arbitration to which he has submitted by his voluntary act. But this, as before said, would be at least very severe upon an administrator, if arbitration be a legal mode by which claims, for or against an estate, may be recognized and established. If, according to this view, an administrator would not, under our laws, be held responsible for submission to an arbitration, to the extent of the liability incurred by the like submission at Common Law, the danger to

which estates would be exposed by such submission, would be most obvious and alarming. An arbitration might become an instrument of the greatest injustice to estates, without the possibility of relief, from any quarter. And such being the consequences, naturally flowing from such submissions, it would seem that an arbitration is an improper, and must be regarded to some extent, as an incompetent tribunal, for the adjustment of claims affecting estates, especially where the claim is against the estate, and the stipulation is, as it was in this case, that the award should be final. By the Statute, the agreement may be in the alternative, that is, the award may be with or without appeal. If with appeal no harm can arise, but if without, its operation is so incongruous with the policy of the law, relative to the settlement of the estates of deceased persons, and may be so irretreivably iniquitous, that we must hold a submission, in this form, to arbitration, by an administrator, to be void ; and that the award, if made, may, on motion, be set aside, and if affirmed, it will be at the hazard of the administrator, if the claim be in fact unjust or invalid in law.

The facts of this case show in a strong light, the necessity of this rule, and the danger to estates of allowing to administrators, a general license of unconditional submission to arbitration—thus giving to awards a sanctity which places them beyond the pale of ordinary legal grounds for revision. The claim, in controversy, bears date in 1845, and was barred more than four times over, before the commencement of suit ; and yet, without evidence that the debt was taken out of the Statute, the Court is required, on the ground of finality of the award, to give judgment for the claim, directly in violation of law, and especially of the provision requiring the Court, before which suit is brought against an executor or administrator, on an open account, to expunge every item which shall appear to have been due two years before the death of the deceased. (Hart. Dig. Art. 2383.)

It is well established, that no acknowledgment, by an admin-

istrator, will bind an estate to pay a claim barred by the Statute; and even if approved by the Chief Justice, and thus become a *quasi* judgment, yet, on proper proceedings in the District Court, this may be set aside. (10 Tex. R. 472; 5 Id. 490; Jones v. Underwood, 11 Id. 116.)

In 1 McMullen, Chan. 329, it is said, "a consent by an administrator, to refer to arbitration the amount due on a covenant barred by limitation during the life of the intestate, will not take the case out of the Statute, though the reference be in pursuance of a provision of the covenant." We have seen that the *quasi* judgment of the Probate Court, establishing a claim that is barred, may be set aside; and the claim, for a final award, of a higher sanction than that attached to a judgment of the Probate Court, shows the danger of the jurisdiction, and the necessity for its suppression or restriction, within such limits as will take away its powers of mischief.

But, in addition, and for the purpose of showing that arbitration is variant from the mode prescribed by law for the establishment of claims against estates, we will refer to Art. 1160, Hart. Dig., which provides that "if a claim be rejected by the administrator, &c., the holder of such claim may, within three months after such rejection, but not thereafter, bring suit against the executor or administrator, for the establishment thereof, in any Court having jurisdiction of the same." "No execution shall issue on a judgment obtained on such suit."

Can these terms be construed as referring to arbitrators, and to an arbitration. The words Court and suit have a distinctive meaning, and suggest a very different idea, from arbitrators and arbitration. These words have been understood and construed, in the connection in which they are used, to mean either the District Court, or that of a Justice of the Peace, as the case might be.

And upon the whole, we are of opinion that arbitration is not a proper mode, for the establishment of a rejected claim against an estate.

The appellant has referred to the fact that more than three months elapsed, after the rejection of the claim, and before the commencement of suit. This was not pleaded or considered below, and we will not dismiss on that ground.

It is ordered, adjudged and decreed, that the judgment be wholly reversed, and it is further ordered, adjudged and decreed, that the agreement on the record, to submit to arbitration, be and the same is hereby declared null and void, and that the same be wholly set aside ; and it is ordered that the cause be remanded for further proceedings.

Reversed and remanded.