J. W. SULLIVAN, Administrator, etc., v. FRANK NICOULIN, Appellant.

Special Administrators: LACK POWER TO SUBMIT TO ARBITRATION. Under Code 1873, sections 2357-2360, providing that special administrators may do all needful acts to collect the property of the deceased, under direction of the court, but shall take no steps as to allowing claims against the estate, a special administrator has no power to submit such claims to arbitration.

**Actions for Work and Material:** INTEREST. Where an administrator sought to recover for services and materials furnished for defendant's house, interest should be allowed on the amount owing deceased from the date at which the work was completed.

**Counter Claims:** HELD BY PARTNERSHIP: *Acquired by partner after death of debtor.* A debt due from a decedent to a partnership, and acquired by one of the partners *after the decedent's death*, could not be set up in a counterclaim in a suit by the decedent's administrator against such partner, since such claim belonged to the partnership, as a distinct entity, and was not available to an individual partner.

**Evidence:** IMPROPERLY OBTAINED: *Admissibility.* Where a trial court, over defendant's objection, ordered that witnesses be permitted to enter his house to inspect certain plastering, as to the condition of which defendant had testified, and such order was obeyed after some protest, the evidence was admissible though it be assumed that such order was illegal.

**STRIKING OUT:** *Proper in part.* Where testimony of a witness was competent in part, the court's refusal to strike out all his evidence was proper.

**Statements Before Jury:** HELD NON-PREJUDICIAL. Where defendant's wife refused to allow an inspection of her house by witnesses, to ascertain the condition of the plastering therein, until assured by the sheriff that the trial court had so ordered, the fact that such refusal was mentioned by plaintiff's counsel in the hearing of the jury was not prejudicial to defendant.

*Appeal from Kossuth District Court.*—HON. W. B. QUARTON, Judge.

TUESDAY, JANUARY 22, 1901.

ACTION by the administrator of S. I. Plumley, deceased, to recover for services rendered and materials furnished in laying the wall for and plastering defendant's house. The answer put in issue the performance of the work as agreed, pleaded certain payments, a counterclaim for damages, and other items, and also alleged thep rior adjustment of all differences by arbitration. A demurrer to the plea averring arbitration was sustained. The other

issues were submitted to a jury, and judgment entered on the verdict against defendant. He appeals.—*Affirmed.*

*Clarke & Cohenour* and *E. V. Sweeting* for appellant.

.*Sullivan & McMahon* and *Carr & Parker* for appellee.

LADD, J.—After Plumley's death, pending the probate of his will, E. H. Clarke was appointed special administrator, and while acting in that capacity, and without the order or approval of court, entered into an agreement with the defendant to submit to arbitration, among other things, whether anything should be allowed the estate for the plastering, and, if so, what amount, and also what amount of damages defendant had suffered by reason of the work not being properly done. The arbitrators found that the estate should recover nothing, and defendant be allowed $75 as damages. The court, in sustaining a demurrer to a division of the answer setting up these facts, held that the special administrator was without authority to enter into such an agreement. No doubt executors and administrators at common law had the power to submit controversies affecting estates to arbitration. *Wood v. Tunnicliff,* 74 N. Y. 38; *Hutchinson v. Johnson,* 12 Conn. 376 (30 Am. Dec. 622) and note; 2 Woerner, Administration section 327. As the award was of no judicial force, an action thereon being necessary to give it effect, and as the executor or administrator, though acting in good faith, was still liable for any difference between the award and the amount recoverable at law, there was little inducement to arbitration, and it was not looked upon with favor. In view of the specific provisions of our Code, and especially section 3344, authorizing the reference of "claims against an estate and counterclaims thereto," in the discretion of the court, to one or more referees, whose decision shall be final, it may well be doubted whether, in this state, an administrator or executor, without

the court's approval, has any power to so submit such con-- troversies. See *Reitzell v. Miller*, 25 Ill. 53; *Yarborough v. Leggett*, 14 Tex. 679. Even more limited are the powers of a special administrator. He is simply "to collect and pre- serve the property of the deceased," and for this purpose "may do all needful acts, under the direction of the court, but shall take no steps in relation to the allowance of claims against the estate." Sections 2357, 2360, Code 1873. So that any action of the special administrator relating to the allowance of the claim of defendant for damages, save as a mere set off, was utterly void. But nothing is claimed for this, as the arbitration of the administrator's cause of action only is pleaded in bar. That a special administrator may maintain actions appears from *Masterson v. Brown*, 51 Iowa, 446. This is incident "to the duty of collecting and preserving the property." Otherwise, indebtedness to the estate might be lost, through the running of the statute of limitations and other causes. Such was the rule with re- spect to the powers of an administrator *pendente lite* at the common law. *Kaminer v. Hope*, 9 S. C. 258. See 2 *Libby v. Cobb*, 76 Me. 471. From this, however, it does not follow that he may enter into a contract for arbitration. In the first place, such an agreement is not essential to the performance of his duties; and, in the next, he has no such interest in the estate as will permit of his so doing. The right of general administrators to arbitrate is founded upon their legal title or interest in the assets of deceased, their power of disposition, and their authority to adjust and settle claims. But the special admistrator, though an officer of the court, is not vested with any of these powers. His authority is no more than that of an agent. *Long v. Burnett*, 13 Iowa, 33. And even a general agent, without express authority, may not submit to arbitration. *Trout v. Emmons*, 29 Ill.433; *Scarborough v. Reynolds*, 12 Ala. 252.

II.  The defendant introduced evidence tending to
show that the plastering was not done according to contract,
and also of its condition up to the fall of 1893, some time
after the occupancy of the house.   Thereupon plaintiff re-
quested that witnesses be permitted to examine the plaster-
ing, with a view of giving testimony in rebuttal with respect
to its condition at the time of the trial, in December, 1896.
Hearing was had apart from the jury, at which it appeared
the plastering was not in the same condition as when put on.
But, as appeared when introduced, evidence of its condition
at the time was material.   Over defendant's objec-
tion, the court directed that the two witnesses have
an opportunity during the forenoon to examine the
walls.   It seems that Mrs. Nicoulin refused to allow one of
the witnesses to enter the house, on the ground that she
doubted whether the court had made such an order; and
this fact was stated by plaintiff's counsel in the hearing of
the jury, without objection, during the consultation of judge
and attorneys, which we infer not to have been in their hear-
ing, though in open court.   Thereupon the sheriff was
directed to assure her of the entry of such an order.   The
appellant vigorously denounces this proceeding on two
grounds:  (1) That it is in violation of rights of habitation;
and (2) that it was prejudicial and prevented a fair trial.
Had admission to defendant's dwelling house been denied,
the authority of the court to make the order might have been
tested.   But the order was obeyed, the inspection of the wit-
nesses had, and their testimony received.   Whether the order
was lawful or unlawful can have had no bearing on the
trial of the cause, unless it in some way prejudiced the jury;
for the rule is well settled, and seems to have been recog-
nized by the defendant, in not pressing an objection on this
ground, that, even though evidence be improperly obtained,
it will not for that reason be rejected.   It is not the policy
of courts, nor is it practicable, to pause in the course of the

trial to enter into a collateral inquiry as to whether a wrong has been perpetrated in obtaining the information imparted by a witness. *Cluett v. Rosenthal,* 100 Mich. 193 (58 N. W. Rep. 1009, 43 Am. St. Rep. 446); *State v. Mathers,* 64 Vt. 101 (23 Atl Rep. 590, 33 Am. St. Rep. 921); *Wood v. Mc-Guire,* 21 Ga. 576. The evidence being admissible, no time need be devoted to the manner of obtaining it, except in so far as this may have affected the trial. As defendant had introduced evidence of the condition of the walls after occupancy by him, in all fairness he should afford the plaintiff the opportunity of inspection. By introducting such evidence he impliedly invited an investigation. He ought not to be permitted to enter upon that field of inquiry, and at the same time exclude the plaintiff from the same privilege. If he undertook to do so, and this came to the knowledge of the jury, he is not in a situation to complain that he is found out. Nor do we think the fact of Mrs. Nicoulin's refusal coming to the attention of the jury of any importance. Any person with a fair undersanding of human nature would have given no weight to such a circumstance, as against her husband. And it was entitled to none. From what we have said it must not be inferred that we condemn the order. While every man's home ought to be surrounded by every safeguard essential to individual privacy and family protection, it may well be doubted whether its exclusiveness should be held to be more sacred than the cause of justice. But as the defendant was in no wise prejudiced by what was done, and the evidence was admissible in any event, we do not pass on that question.

III. The defendant pleaded as a counterclaim certain items furnished deceased by a co-partnership of which he was a member, and acquired by him individually after Plumley's death. That a demand obtained after an intestate's death may not be pleaded as an offset or counterclaim in an action by the administrator is

well settled., *Wikel v. Garrison,* 82 Iowa, 453; *Cook v. Lovell,* 11 Iowa, 81; *Woodward v. Laverty,* 14 Iowa, 381. Nor had he any such interest in the firm account as that he might offset it against a debt due the deceased. A partnership is a distinct legal entity (*Brumwell v. Stebbins,* 83 Iowa, 425), and as such is the real party in interest, by whom the remedy must be sought (*Sypher v. Savery,* 39 Iowa, 258). Under this decision the defendant might not have brought suit on this account when the action was begun, and hence may not plead it as a counterclaim. Section 3570, Code. To be available, he must have owned it at the time of the commencement of the action. It is not enough that it belonged to a partnership of which he was a member. "It must be such demand as that he, in his own name, or in the name of the defendants sued, without bringing in the name of a stranger to the suit, may maintain an action of debt or *indebitatus assumpsit* upon it against the party or all the parties suing, as the case may be." *Jones v. Blair,* 57 Ala. 457; *Howe v. Snow,* 3 Allen, 111; *Lamb v. Brolaski,* 38 Mo. 51; *Kirbs v. Provine,* 78 Tex. 353 (14 S. W. Rep. 849). In Pennsylvania, on the contrary, a partner may, with the assent of the other members, plead a firm claim as a set-off in such a case. *Tustin v. Cameron,* 5 Whart. 379; *Montz v. Morris,* 89 Pa. St. 392. The objection to such a rule is that a party bringing an action may never know whether a partnership account will be pleaded as a set-off, as all the members may not assent, and the individual creditor is thereby exposed to the uncertainties of meeting a defense depending solely on the course of others not connected with the suit. Besides, an unwarranted preference might sometimes in this way be obtained over other partnership creditors of the firm. Nor do these cases give any consideration to the, point that the co-partnership is a legal entity, distinct from the members composing it, and is the real party in interest, by which alone suit may be brought. It conclusively appears that all these items were owing to the firm, rather than to Nicoulin

individually, and therefore were properly excluded from the consideration of the jury.

IV.   The defendant moved to strike out Ebergall's testimony on the ground that he had no knowledge of the matters spoken of.   The motion was in three parts; the first relating to the brick and lath, the second to the stucco, and the third to all materials.   As some of his testimony concerning each of these matters was competent, the ruling in refusing to strike all the evidence bearing thereon was correct.   The court may, though it is not bound to, sift the evidence and separate chaff from the wheat. That is the duty of the litigant. *Roeller v. Hall,* 62 Minn. 241 (64 N. W. Rep. 559); *Hudelson v. Bank,* 56 Neb. 247 (76 N. W. Rep. 570); 1 Thompson Trials, section 719.

V.   The court rightly advised the jury to allow the plaintiff interest at the rate of 6 per cent. per annum on the amount owing deceased from the date the job was completed.   It was then due.   It was not a running account, to which the statute relating to interest after the lapse of six months solely refers.   The criticism of other instructions is without merit.—AFFIRMED.