R. P. Jackson, Special Administrator, Appellee, v. Julia C. Jones, Appellant. (In Equity.)

R. P. Jackson, Special Administrator, Appellee, v. Julia C. Jones, Appellant, et al., Defendants. (In Probate.)

No. 45667.

November 18, 1941.

Rehearing Denied March 13, 1942.

Frank F. Wilson and Beard & Beard, for appellee.

Emmet R. Warin, O. M. Slaymaker, R. E. Killmar, and D. D. Slaymaker, for appellant.

WENNERSTRUM, J.—The proceedings that are before us involve two actions that were consolidated for trial and were determined in a single ruling by the district court. Julia C. Jones, widow of K. D. Jones, decedent, was named administratrix upon the opening of her husband's estate. R. P. Jackson later, upon the application of Tapp Brothers, claimants in the estate, was named special administrator. His appointment was made while Julia C. Jones continued to hold the office of administratrix. No action has been taken to remove her from her originally appointed position. The special administrator, in the probate proceedings, was authorized by the court to bring an action in equity against Julia C. Jones to set aside a deed given by the decedent, Jones, to his wife shortly before his death. This deed had conveyed an unincumbered farm of approximately 239 acres to the widow. In the equity action brought by the special administrator to set aside the deed given by the decedent to his widow, there was a default entered against Julia C. Jones and a decree signed setting aside the deed. Julia C. Jones sought to have the default and the decree as entered set aside. The widow, in the probate proceedings, also endeavored to have set aside an order that had been entered previously authorizing the special administrator to sell the real estate that was involved in the equity action. Upon the trial of the two actions, jointly heard, the court refused to set aside the default in the equity action, and also the order

authorizing the special administrator to sell the real estate. Julia C. Jones appeals.

The facts as disclosed by the record are as follows: K. D. Jones died intestate on the 1st day of August, 1935. He had been the owner of 239 acres of unincumbered land in Ringgold County, Iowa. The decedent Jones became seriously ill during the early hours of August 1, 1935, and was advised by the attending physicians that he could not live long. A notary public was called early that day and a deed was prepared which conveyed the land in question to Julia C. Jones. This deed was signed by the decedent by mark and delivered. It was recorded in the office of the Recorder of Deeds in Ringgold County, Iowa, on August 9, 1935.

The widow, Julia C. Jones, was appointed administratrix of the estate of K. D. Jones, deceased, on August 24, 1935, gave bond, qualified and entered upon the discharge of her duties as such administratrix, and she has since continued in that capacity, no proceedings having been instituted to remove her from that office. The decedent, Jones, left surviving him, his widow, Julia C. Jones, two children born to him and the appellant and also two children born to him by a previous marriage.

Alvin Jones, a son of the first marriage, owed two promissory notes to a partnership known as Tapp Brothers. K. D. Jones, the decedent, had signed these notes as surety. The claim on this indebtedness was filed against the estate of K. D. Jones and was allowed on November 7, 1939, as a claim of the third class in the amount of $2,651.72. This claim has never been paid.

On January 28, 1937, the appellant, Julia C. Jones, as administratrix, filed her final report in her husband's estate. This final report showed that the claim of Tapp Brothers remained unpaid and further stated that the estate was insolvent. Objections were thereafter filed to this final report. They have not been ruled upon by the court and Julia C. Jones remains the administratrix of this estate, as originally appointed.

On January 4, 1938, Tapp Brothers, the claimants, filed an application for an order for an examination of Julia C. Jones, and for the appointment of a special administrator. An

examination and hearing was had on May 12, 1939. On this date the court entered an order to the effect that Julia C. Jones admitted at this hearing that her husband's estate was insolvent; that there was not sufficient personal property to pay the claims of this estate, and that the said Julia C. Jones admitted that the transfer of the real estate by her husband to her was made on the date of his death and that she did not pay anything therefor; that a special administrator should be appointed and an action brought by said administrator to secure for the Jones estate the title to the real estate conveyed to the widow. On July 31, 1939, an order was signed in the probate proceedings in the Jones estate appointing R. P. Jackson as special administrator. This order was not filed until November 27, 1939. On December 5, 1939, there was filed another order appointing R. P. Jackson as special administrator and authorizing him to bring suit to set aside the deed to the 239 acres of land conveyed to Julia C. Jones. On December 7, 1939, the special administrator gave bond and letters of administration were issued to him. Thereafter a suit in equity was filed by the special administrator in the District Court of Ringgold County, Iowa, against Julia C. Jones to set aside the deed to the land conveyed to her.

The petition of the special administrator alleged that the conveyance to Julia C. Jones was without consideration, was a fraud on the creditors of K. D. Jones, deceased, and further alleged that the conveyance was made to avoid the payment of the claim of Tapp Brothers. It further alleged that after the 239 acres of land had been conveyed the estate was thereafter insolvent. The original notice in this equity action which was brought for the January 1940 term of the District Court of Ringgold County, Iowa, showed that substituted service was had on Julia C. Jones by leaving a copy at the home of William C. Jones, her son. At that time she was, as she claimed, working in Nebraska and living at the home of relatives. Julia C. Jones in later proceedings questioned the sufficiency of this notice and claimed she was not a member of the family of her son, William C. Jones. Warin & Warin, Attorneys at Law, Mt. Ayr, Iowa, appeared for Julia C. Jones in the equity proceedings but the question has since arisen as to whether or not they were authorized to do so. They were attorneys for her in the estate proceedings. There was no pleading filed by

Julia C. Jones in the equity case and on March 23, 1940, a decree was entered in the action brought by the special administrator holding that the deed made by K. D. Jones, the decedent, to Julia C. Jones, was without consideration, a fraud on the creditors of K. D. Jones and that the same was made for the purpose of defrauding the creditors, Tapp Brothers, and to avoid payment of their claim against K. D. Jones. The decree showed that prior to its entry and signing by the court Warin & Warin withdrew as attorneys for Julia C. Jones.

On May 3, 1940, which was during the same term of court in which the decree was granted, Julia C. Jones filed a verified answer and also an application to set aside the default and sought the right to defend in the equity action. It was further alleged in an amendment to the application to set aside the default that R. P. Jackson, special administrator, did not have any right or authority to bring or prosecute the action in equity to set aside the deed; that she was the duly appointed, qualified and acting administratrix of the estate of K. D. Jones, deceased, and that the district court, as a probate court, had no right, authority, or jurisdiction to appoint a special administrator or any other kind of administrator while she was acting as administratrix and that the court could give the special administrator no authority to prosecute an action to set aside the deed and for such reason the decree entered was without jurisdiction and without force and effect.

Julia C. Jones also sought to have set aside the order which authorized the special administrator to sell the 239 acres of land. In the estate proceedings the widow also alleged that 40 acres of land was her homestead and that one third of the land, her dower interest, was not liable for the Tapp Brothers debt.

Upon the joint hearing and trial the application and amendments of Julia C. Jones in the equity action to set aside the default were dismissed and the decree that the court had previously entered setting aside the deed to the 239 acres of land was confirmed. The court also refused to set aside the probate order granting the special administrator authority to sell the land. Julia C. Jones appeals from these several rulings of the trial court.

The appellant on this appeal, along with other claimed errors on the part of the court, raises certain jurisdictional questions that should receive our consideration. It is contended that the District Court of Ringgold County, Iowa, sitting as a probate court, was without power, authority or jurisdiction to appoint a special administrator of the estate of K. D. Jones, deceased, for the reason that Julia C. Jones, at the time of the appointment of the special administrator, was then acting as administratrix of her husband's estate and that she had never been removed or her right to act as such administratrix challenged or set aside and that the court had no jurisdiction, power or authority to entertain the petition of the special administrator to set aside the deed made by K. D. Jones to Julia C. Jones.

The question that must receive our first consideration is the right of a probate court to appoint a special administrator under the circumstances as are presented in this case. The statutory provisions relative to the appointment of a special administrator and his powers and duties are set forth in the following sections of the 1939 Code of Iowa:

"11885 Special administrators. When, from any cause, general administration or probate of a will cannot be immediately granted, one or more special administrators may be appointed to collect and preserve the property of the deceased, and no appeal from such appointment shall prevent their proceeding in the discharge of their duties."

"11886 Inventory—preservation of property. They shall make and file an inventory of the property of the deceased in the same manner as is required of general executors or administrators, and shall preserve such property from injury, and for that purpose may do all needful acts under the direction of the court, but shall take no steps in relation to the allowance of claims against the estate. Upon the granting of full administration, the powers of the special administrators shall cease, and all the business be transferred to the general executor or administrator."

The provision of the Code in regard to the appointment

of a temporary administrator is found in section 11968, which is as follows:

"11968 Executor interested. If either of the executors or administrators is interested in favor of a claim against the estate, he shall not serve in any manner connected therewith, and if all are thus interested, the court shall appoint some competent person a temporary executor or administrator in relation to such claims."

Powers and duties of a special administrator have been commented upon by this court in the case of Long v. Burnett, 13 Iowa 28, 33, 81 Am. Dec. 420, 422, where it is stated:

"The Statutes of 1843, page 677, very clearly define the extent of the particular powers and duties of a special administrator, showing, in the first place, that his appointment is contingent, and can only be made when for some cause, such as the pendency of a suit concerning the proof of a will, or some other cause, regular administration is delayed. His functions are limited to a few prescribed duties, in relation to the preservation of the personal assets, and these cease as soon as a regular administrator is appointed. He cannot be sued. The statute of limitations does not run against the creditors of the estate during the period of his agency. He is simply an agent, and not an administrator. He has no power to settle the estate; much less power to sell land for any purpose. It was no more competent for the judge of probate to grant him license to sell land, than that of any third person. His act in doing so was extra-judicial, and void. The judge's power over the real estate of deceased persons is derived through the medium of regular administration. This was wanting in the case before us. Hence his jurisdiction did not, as it could not under the circumstances, attach. The argument, therefore, that the regularity of these proceedings could not be collaterally attacked, has no proper foundation. The law confers upon judges of probate jurisdiction over the settlement of the estates of decedents. This jurisdiction, however, only attaches and becomes effective after granting letters of administration to some one who is to exercise all the powers

and duties of a regular administrator. This done, the power to grant a license to sell real estate to pay debts, nevertheless does not arise till a petition, as the law directs, is presented by a legal administrator. When such a petition is presented, jurisdiction over that particular subject is acquired, and the subsequent proceedings, although those of a court of inferior and limited powers, will be presumed as regular and conclusive as those of courts of general jurisdiction, and shall not be collaterally assailed. This, we suppose, is familiar law, but the presentation of a petition in this class of cases is not *enough;* it must be done by an administrator in the full statutory meaning of such a commissioned agent, and it is the union of both of these elements that constitutes the jurisdictional fact upon which the power of the court to act in the premises is made to depend, and they should both appear of record. So far, however, from this being the case, the record affirmatively shows that the petition was not presented by an administrator, but by a person who had no power whatever under the law to act, when the prayer of the petition was granted. And it is this feature of the case that distinguishes it from all the cases cited by counsel for the defendants.''

See also Pickering v. Weiting, 47 Iowa 242, 244. This court in the case of Rauen v. Prudential Ins. Co., 129 Iowa 725, 744, 106 N. W. 198, in further commenting upon the power and authority of the special administrator held that such administrator had no authority to settle a claim against an insurance company. Attention is also called to the following cases that comment upon the question that is before us: Sullivan v. Nicoulin, 113 Iowa 76, 79, 84 N. W. 978, 979; Larson v. Johnson, 72 Minn. 441, 75 N. W. 699; Powell v. Jackson, 60 Ind. App. 597, 111 N. E. 208.

In 24 C. J. 1180, 1181, section 2806, that authority, in commenting upon the right and powers of the special administrator as to realty, makes the following statement:

''Ordinarily, a special administrator has no right to the possession or control of decedent's realty, and has no power to mortgage or lease the realty, or to sue to recover decedent's

real property or to set aside a fraudulent conveyance made by decedent. Power to take possession of and manage the realty is, however, sometimes conferred on special administrators by statute or order of the court of probate jurisdiction.''

With the previous comments in mind as to the limited character of activity that a temporary or special administrator may carry on under their strictly statutory authority, we should give consideration to the particular matters that were before the court and as to what authority the court had to see that the probate court function in a purely administrative matter.

I. The question naturally arises as to whether the probate court has certain inherent powers which give it authority to see that it is not left stalemated because of certain conditions. A probate court, in its broadest sense, is a court of administration. It is a court that is charged with the duty of seeing that estates are properly and promptly administered. It has inherent power to see that its officers act efficiently and effectively and if they do not act or because of conflicting interests cannot act so that the rights of all parties are protected and all necessary matters are brought before the proper tribunal for consideration, the probate court has the inherent power to appoint an officer for and on behalf of the court to see that no rights are lost because of inaction. This is what the court did in the present case.

It will be noted (Code section 11968) that a temporary executor or administrator shall be appointed where an executor or administrator is interested in a claim against an estate. In the present case there is no claim pending against the estate where the executor is interested. However, because of the transfer of title to Julia C. Jones as an individual, it is apparent that this administratrix had an interest in the matter that was before the district court which is adverse to that of the estate. The selection of the name of the court appointee is not all-important provided the appointment is a proper one. Because of the interest that the administratrix had in the matter, it is our conclusion that the court had authority, under its inherent administrative powers, to appoint an officer to act in the matter

wherein the administratrix had an adverse interest. There was no occasion for the removal of the general administratrix. However, inasmuch as she was grantee in the deed and interested in the real estate in question we hold that it was proper for the court to appoint an administrative officer to act, and in this case the district court referred to him as a special administrator to bring a suit in equity in an effort to set aside the deed. The fact that the court called its appointee a special administrator does not necessarily mean that this appointee is limited to the statutory powers of a special administrator. We hold the appointment was not void inasmuch as the appointee was named under the court's inherent power over the settlement of estates. As bearing upon the question as to the right of the probate court to take administrative action where such action is deemed advisable see Haradon v. Boardman & Cartwright, 229 Iowa 540, 294 N. W. 770.

II. By reason of the comments previously made, it is our holding that the appointee of the court had no authority to sell the real estate and the court's order authorizing the sale of the real estate is set aside.

III. We have given consideration to the appellant's application to set aside the default as entered in the equity action. There is much in the record that appeals to us as a proper showing to justify a setting aside of the default. It is generally the holding of courts that trials are looked upon with favor and defaults should be avoided, if possible. Under all the circumstances, it is the judgment of this court that the default should be set aside.

By reason of the holdings announced, the case is affirmed in part and reversed in part and remanded for the entry of proper rulings and orders in the respective proceedings in conformity with this opinion.—Affirmed in part; reversed in part.

MILLER, C. J., and BLISS, STIGER, OLIVER, and GARFIELD, JJ., concur.

SAGER, J., concurs in the result.