In the Matter of the ESTATE of Harry Dwight JARVIS, Deceased.

No. 54375.

Supreme Court of Iowa.

April 9, 1971.

W. K. Cash, Albia, for John A. Jarvis, individually and as Administrator of the Estate of Harry Dwight Jarvis, deceased, appellant.

Bailey C. Webber, Ottumwa, for Fred J. Jarvis, appellee.

MOORE, Chief Justice.

This is an appeal by John A. Jarvis, individually and as Administrator of the Estate of Harry Dwight Jarvis, from a probate order denying certain proposed action against his brother, Fred J. Jarvis. The lower court held the issues had been adjudicated by approval of a special administrator's report. We affirm.

Harry Dwight Jarvis died intestate April 30, 1965 leaving as his sole heirs his sons Fred J., M. D., of Seattle, Washington and John A., attorney, of Chariton, Iowa. John was appointed administrator on Fred's application and on October 29, 1965 filed a probate inventory listing purported advancements of $10,000 by the father to Fred, together with two alleged loans owed by Fred, one for $12,500 with interest from September 15, 1955 and another for $3500 with interest from June 10, 1960. On the same date, John filed an application for authority to hire a Seattle attorney to collect the reported alleged assets from Fred. Fred, by Mr. Webber, his Iowa employed attorney, resisted the application and it was never granted. It was Fred's contention the father had advanced $10,000 to John as well as funds for the construction of a home and office. He also asserted John was indebted for two years support by the father and $2400 allegedly paid as child support for John's two children.

Following hearing on charges by Fred that John was personally involved in the problem of marshalling assets and would be involved in self-dealing contrary to Code section 633.155, the lower court on March 18, 1967 appointed Andrew J. Westendorf to serve as special or temporary administrator.

The order appointing Westendorf charged him with the duty of investigating the claimed obligations of Fred as listed in the inventory and with investigating the indebtedness, if any, of John to the estate. The special administrator was ordered to

determine and report what amounts, if any, were owed by Fred and John.

The special administrator, assisted by a court appointed attorney, conducted an extensive investigation and on May 11, 1968 filed his report in which he recommended and concluded Fred owed $3510 plus interest of 5% from June 6, 1960 on a loan made by his father, $222.29 paid by Fred to his father in September 1963 was a gift and that Fred's notes to his father totaling $12,500 were marked paid on the face and payment had been acknowledged in a letter written by the father. The report further found each son had been advanced $10,000 by his father. These were offset and not considered as assets of the estate. The report further recommended the collateral issues raised by Fred be ignored.

The special administrator's report was set for hearing at three p. m. September 20, 1968. The attorneys for the parties, the special administrator and John A. Jarvis were duly notified. No contention is made otherwise.

No objections to the special administrator's report were made. On September 25, 1968 the lower court issued an order including these provisions:

"It is therefore ordered, adjudged and decreed by the Court that the report and findings of Special Administrator, Andrew J. Westendorf be and the same is hereby approved and confirmed by this Court."

"It is further ordered that any application for further action on the part of the Special Administrator in regard to his findings shall be filed in this estate on or before the 10th day of October, 1968, and in the event such application be not so filed, the Special Administrator shall on the 10th day of October, 1968 be finally discharged."

Neither Fred nor John made an application within the time allowed for requesting further action by the special administrator. Fred made an application for further ac-

tion on the claims against John but was one day late and the matters raised are not relevant to this appeal.

On November 19, 1968 John filed an application seeking to litigate the claims against Fred. He also individually filed a petition in the probate proceedings suing Fred on each of the alleged claims which he had listed in the probate inventory and each of which the special administrator had investigated and made findings.

Counsel for Fred filed a resistance to John's November 19th application on the ground the issues raised had been adjudicated. It was further prayed John's petition as an individual be stricken from the probate file. Following hearing the lower court in carefully prepared findings of fact and conclusions of law held the issues had been adjudicated, ordered the probate inventory amended accordingly and ordered John's petition stricken from the probate record. On this appeal John asserts the lower court erred in each of said adverse rulings.

■ I. A probate court, in its broadest sense, is a court of administration. It is charged with the duty of seeing that estates are properly and promptly administered. It has inherent power to see that its officers act efficiently and effectively and, if because of conflicting interests can not act so that the rights of all parties are protected, the probate court has the inherent power to appoint an officer for or on behalf of the court to see that no rights are lost. Whether the appointee is designated a special or temporary administrator is of no consequence. Jackson v. Jones, 231 Iowa 106, 114, 300 N.W. 668, 672; In re Estate of Peers, 234 Iowa 403, 411, 12 N. W.2d 894, 898.

Code section 633.3(32) defines temporary administrator as: "any person appointed by the court to care for an estate pending the probating of a proposed will, *or to handle any special matter designated by the court*." (Our emphasis)

Our careful review of the record reveals John participated fully in the proceedings leading to the appointment of the special administrator. He knew the matters to be handled included determination of what amount, if any, Fred owed the estate. John made oral statements and furnished documents to assist in the investigation. At no time did he raise any objection to the actions taken. When the special administrator's report was filed John made no objection and took no exceptions. He took no action within the ten day period set by the court for further action by the special administrator and thus permitted his final discharge. The relief sought in John's application of November 19, 1968 was barred under the doctrine of res judicata as the facts had been fully and fairly investigated and decided. Hutchinson v. Maiwurm, Iowa, 162 N.W.2d 408, 410; King City, etc. v. Southern Surety Co., 212 Iowa 1230, 1240, 238 N.W. 93, 98; Jordan v. Stuart Creamery, Inc., 258 Iowa 1, 5, 137 N.W.2d 259, 261, and citations.

II. Also John's attempt to further litigate the issues decided by the court based on the special administrator's report is barred under Code section 633.36, which provides:

"Orders in probate. All orders and decrees of the court sitting in probate are final decrees as to the parties having notice and those who have appeared without notice."

III. We find no merit in John's contention the provisions of Code section 633.33 required the court to try as a law action the question of establishment of contested claims. The record discloses John participated and acquiesced in the duties assigned to the special administrator which included determination of the amounts, if any, owed by Fred. John has had his day in court and there is no reason for further litigation on what the inventory should include regarding Fred's obligations.

We find no reversible error as to the propositions assigned as error on this appeal.

Affirmed.

All Justices concur except STUART, J., who takes no part.