In re Estate of Irene Peers.

No. 46389.

February 8, 1944.

George O. Van Allen, administrator de bonis non, of Mount Pleasant, pro se.

John M. Rankin, Attorney General, and Floyd Philbrick, Assistant Attorney General, for State of Iowa, appellee.

Ben A. Galer, County Attorney, for Henry County and John P. Brown, County Treasurer, appellees.

Imogen B. Emery, of Cedar Rapids, for Laura S. Peers Teed, Ida Mae Gates, Theresa Catherine Lane, and Charles C. Peers, appellees.

WENNERSTRUM, J.—The administrator de bonis non of the estate of Irene Peers has appealed from an order of the district court which allowed a claim of the State of Iowa filed in this estate for the care of Irene Peers as a state patient in the Mount Pleasant State Hospital. The administrator de bonis non, as ap-

pellant, contends that the claim of the State was not filed and presented within the limit of time for filing claims of the fourth class, as set forth in section 11972 of the 1935 Code of Iowa. The court held that the provisions of this section were not applicable to the State of Iowa, that the State's claim was not barred, and that it should be allowed. This is the sole question on appeal.

A summary of the facts and the pleadings filed, as disclosed by the record presented, is as follows:

Irene Peers was admitted to the Mount Pleasant State Hospital, a state institution for the care and treatment of insane persons, on or about November 22, 1924, as a state patient. (Code section 3581 (2), 1924 Code of Iowa.) When a commitment is made of a patient "who has no legal settlement in this state or whose legal settlement is unknown," payment for the person's care at a state hospital for the insane shall be made by the state rather than by the particular county from which commitment is made. (Section 3591, 1924 Code of Iowa.) Irene Peers remained in the Mount Pleasant State Hospital as a patient until the time of her death, which occurred on November 3, 1937. On this same date an administrator of her estate was appointed. On February 15, 1938, an order was entered in the estate proceedings directing the administrator, after the payment of costs and claims, to pay the balance remaining in his hands to the county treasurer of Henry County, Iowa, for the benefit of the school fund, if, within six months after the giving of notice of such intention to make payment to the county treasurer no heirs of Irene Peers appear to claim an interest in the estate. (Code sections 12035, 12038, 12039, 4470, 1935 Code of Iowa.) On February 8, 1939, the final report of the administrator was filed in this estate, wherein it was stated that the sum of $1,598.73 had been paid to the county treasurer of Henry County, Iowa, for the benefit of the school fund, and on February 16, 1939, the court entered an order of discharge of the administrator of the estate of Irene Peers.

On May 18, 1943, there was filed in the Irene Peers estate an application alleging that the parties named therein were brothers and sisters of the decedent and asking for a distribution of the funds held by the county treasurer to these parties. On May 18, 1943, the court entered an order stating that the estate

was reopened for the purpose of passing on the application of the alleged heirs, also on a certain claim of the State of Iowa, and for the further purpose of determining the question of any unpaid inheritance tax due the State of Iowa. An administrator de bonis non was appointed, who thereafter qualified. The record further discloses that on May 28, 1943, the State of Iowa filed a claim which alleged that Irene Peers had been admitted to the Mount Pleasant State Hospital as a patient at large, and that the cost of maintaining her at said institution during the period she was there confined was $2,894.53, which amount was unpaid, and asked that the claim be allowed. A resistance was filed by the administrator de bonis non wherein he alleged that the year for filing claims in the original administration expired on November 3, 1938; that said administration was closed; that no claim was filed by the State of Iowa against the estate until May 28, 1943, and that under the provisions of section 11972 of the 1935 Code of Iowa, this claim was barred by reason of the State's failure to file the same within twelve months from the date of giving notice of the appointment of the original administrator. It was further alleged that the State of Iowa, through the superintendent of the state hospital at Mount Pleasant, had full knowledge of the existence of the claim, of the death of Irene Peers, and of the original opening of the estate, and that by reason of the negligence of the State it was estopped from asserting its claim. The administrator de bonis non asked that the claim be disallowed.

On June 1, 1943, the matters then pending were submitted to the court on an agreed stipulation of facts and on June 28, 1943, the trial court filed a memorandum opinion, wherein it held that the county treasurer should pay to the administrator de bonis non the funds received from this estate, and that the claim of the State of Iowa in the sum of $2,894.53 should be allowed and established as a claim of the fourth class. A judgment confirming the ruling of the trial court was thereafter entered.

I. The application relative to the reopening of the estate developed by reason of the claimed interest of certain heirs in the property which otherwise would escheat for the benefit of the school fund. In a similar proceeding disclosed in the case of

Joy v. Woodbury Savings Bank, 226 Iowa 1251, 1255, 286 N. W. 443, 445, this court held that the notice to claimants and heirs in an escheat proceeding was not a new invitation to creditors to claim the money on hand, and therein held that the word "claimant" as used in the escheat proceedings referred to persons interested in the estate as heirs and not to creditors. Although the claimant in the last-cited case was not the State of Iowa, this court there said, in regard to a general claimant:

"Claimant does not purport to advise us what authority the court would have to extend the period of limitations in 'a new invitation to creditors' to file claims against the estate."

This holding would have application and be controlling in the instant case unless we conclude that the provisions of section 11972 of the 1935 Code of Iowa have no application to the State of Iowa on the theory that a statute of limitations or nonclaim does not apply to the state.

II. The manner in which an estate shall be administered in the State of Iowa is prescribed by the statute and the manner and order in which expenditures shall be made, on behalf of an estate, are specifically set out in the Code. Section 11969 of the 1935 Code of Iowa provides that costs of administration shall be a first claim against an estate; then, charges of last sickness and funeral of deceased shall be paid; and third, any allowance made by the court for the maintenance of the widow and minor children. Section 11970 of the 1935 Code of Iowa relates to the order of payment of other claim obligations of the estate and directs that they be paid in the following order:

"1. Debts entitled to preference under the laws of the United States. 2. Public rates and taxes. 3. Claims filed within six months after the first publication or posting of the notice given by the executors or administrators of their appointment. 4. All other debts. 5. Legacies and the distributive shares, if any."

Section 11972 of the 1935 Code of Iowa provides that claims of the fourth class "not filed and allowed, or if filed and notice thereof * * * is not served within twelve months from the giving of the notice aforesaid, will be barred, except * * * or

unless peculiar circumstances entitle the claimant to equitable relief.''

The record in the matter now before us on appeal shows that no claim on behalf of the State of Iowa was filed within the twelve-months' period as provided by section 11972, and no peculiar circumstances have been pleaded that would entitle the State, as a claimant, to equitable relief, and unless we hold that this statute is not applicable to the State of Iowa its claim must of necessity be held to be filed too late. It will be observed by reference to Code section 11970(1) of the 1935 Code of Iowa, that debts entitled to preference under the laws of the United States shall have first priority in the payment of debts and claims noted under that section. Under the federal statute and under the holding of federal courts there is no necessity of filing claims wherein the United States is a party and claimant. See 31 U. S. C. A., chapter 6, section 191, and note 30; 31 U. S. C. A., chapter 6, section 192, and note 3. Section 11970 further provides that public rates and taxes shall have second priority in payment.

In the case of In re Estate of Wagner, 226 Iowa 667, 672, 284 N. W. 485, 488, in connection with the claim of a county, it is stated :

"There is nothing in the provisions of this chapter which would warrant the court in labeling the expense of the care and keep of an insane patient a public rate within the provisions of section 11970 of the Code.''

However, the statute now has been amended and claims for the care and assistance of persons committed to a state hospital for the insane ''* * * shall be allowed as a claim of the second class against the estate of such decedent.'' Acts of the Forty-eighth General Assembly, chapter 98, section 4, June 1, 1939, now section 3604.6, 1939 Code of Iowa.

It will thus be observed that the present claim for the care of the decedent by the State cannot be and was not considered by the trial court under the statutes then in effect on the same basis as claims of the second class. It was held to be timely filed as a claim of the fourth class. We have concluded that the trial court was in error in so holding.

We have, prior to the enactment of the new legislation and under the statutes then in effect, held that claims of a county for the care of an insane person must be timely filed. In re Estate of Wagner, supra. We do not find any sound reason why the State should not be held to the same rule of law as a county in connection with the filing of such claims against an estate. This court, the legislature of this state, and the bar and public have indicated their desire to make possible the prompt closing of estates. To hold that the State could, through the reopening of an estate, present its claim, would, in our opinion, raise doubts as to when an estate would be finally closed. We feel that our statutes should be interpreted so as to facilitate the closing of estates and for certainty of titles to real estate passing through an estate.

Appellate courts of other jurisdictions have had occasion to pass upon the question here presented as to whether or not the claim of a state for care of an insane person, not filed against an estate within the time provided by statute, is barred. The supreme court of this state has not had occasion to pass upon this matter, but in the case of State v. Evans, 1927, 143 Wash. 449, 451, 255 P. 1035, 1036, 53 A. L. R. 564, wherein a question of this character was presented, it is stated:

"These probate statutory provisions, it seems to us, are of greater potency in the protection of estates of decedents against the delayed action of claiming creditors than our general statutes of limitation looking to the mere withholding of the remedy of civil action from suitors because of the lapse of the prescribed periods for the commencement of such actions. An important consideration in our present inquiry is that a creditor's claim against the estate of a deceased person is, in substance, a claim in rem since it is of necessity only a claim against the property left by the deceased. It is not a personal claim against anyone, under our system of administering the estates of decedents * * *.

"The decisions of the Courts of the Union touching the statutory limitations against the right of a state to sue upon or otherwise establish its claim against an estate of a decedent, read superficially, may not seem wholly harmonious; but we

think, as applied to systems of probate jurisdiction and administration of estates of decedents such as exist in our state, the weight and reason of the authorities are decidedly to the effect that a state as a claimant is subject to exactly the same limitations as any other creditor who may make claim against the estate of a decedent.''

This case is followed in In re Rhodes, 1938, 196 Wash. 618, 83 P. 2d 896.

In the case of Bahr v. Zahm, 1941, 219 Ind. 297, 302, 37 N. E. 2d 942, 944, in commenting upon the claim of the state for care of a prior ward of a state hospital, wherein the question as to the delayed filing of a claim was before the court, it is stated:

''It seems to us that the difference between the statutes here involved is basic. The non-claim statute relates to the exercise of a right, while the statute relieving the State from the operation of statutes of limitation pertains only to remedies. The non-claim statute imposes a condition precedent to the enforcement of a right of action, while statutes of limitation create defenses that must be pleaded and may be waived. We do not know of any statute or rule of law that relieves the State of Indiana from the obligation to perform conditions precedent upon which the enforcement of a right of action is made to depend.''

In the case of People v. Osgood, 1930, 104 Cal. App. 133, 138, 285 P. 753, 755, it is held that a claim of the State of California not timely filed against the estate of one of its wards was barred, and in commenting upon the manner and order in which claims should be paid, the court makes this statement:

''The state may claim under any one of the foregoing statutes. If it does not do so the statute is silent as to any other remedy. If it be asserted that the statute thus fails to protect the state, the clear reply is that there is a legislative omission. (San Francisco etc. L. Co. v. Banbury, 106 Cal. 129, [39 P. 439.]) But that fact is for the consideration of the legislature.''

The statute of the state of California provides for the payment of certain claims and obligations of an estate in much

the same manner as the state of Iowa, and by reason of this fact the statement of that court has particular application to the question that is here presented.

In the case of In re Dotson's Estate, 1941, 154 Kan. 562, 569, 119 P. 2d 518, 523, it is stated:

"With respect to the time within which to present the demand against an estate, the state is in the same position as any other creditor. There is no hardship in this, particularly with respect to the type of claim attempted to be enforced here, for the state knew of the death of Mabel Dotson as soon as it occurred. There is no reason why it could not have moved promptly."

In the case of Brooks v. Federal Land Bank, 1932, 106 Fla. 412, 422, 143 So. 749, 753, which involved the allowance of a claimed federal claim, we find this significant statement:

"A statute of non-claim while partaking of the nature of a statute of limitations is not wholly such. It constitutes part of the procedure of court, the orderly, expeditious and exact settlement of the estates of decedents and constitutes part of the procedure which courts must observe in the settlement of estates of deceased persons and where no exemption from the provisions of the statute exist the court is powerless to create one. If such were not the case the settlement of an estate might be deferred indefinitely and the heirs and legatees, the rightful owners of the property of the estate or beneficiaries of the will of the decedent kept out of the enjoyment of their possessions and deprived of the benefits secured to them by the laws of the State for such unreasonable time as to practically deprive them of their property. No such possibility should be brought about by the failure of government officials to comply with the requirements of the statute."

Other cases which hold to the same effect are State v. Crutcher's Admr., 1852, 2 Swan, Tenn, 504; In re Mitchell's Estate, 1833, 2 Watts, Pa., 87; and Hill Ex. v. State, 1861, 23 Ark. 604.

We find there are two jurisdictions that hold that under circumstances such as are presented in this case the state is not barred from filing its claim in an estate proceeding after the

time designated by the statute. This is the holding in the Mississippi case of Parmilee v. McNutt, 1843, 1 Smedes & M., Miss., 179, and the Oklahoma case of Richison v. State ex rel. Barnett, 1936, 176 Okla. 537, 56 P. 2d 840. However, with the exception of the Oklahoma court, the tendency of the later decisions is to hold that the limitation as to the filing of claims against an estate applies to claims on behalf of the state as well as those of other creditors.

We are conscious of the fact that under previous holdings of this court we have held that a general statute of limitations does not apply to the State of Iowa. Des Moines County v. Harker, 34 Iowa 84; Kellogg v. Decatur County, 38 Iowa 524; Manatt v. Starr, 72 Iowa 677, 34 N. W. 784. The cases cited were in civil actions, two of which involved the foreclosure of school-fund mortgages. None of these cases was concerning estate proceedings. The statute here in question is a statute of limitations. Soppe v. Soppe, 232 Iowa 1293, 1294, 8 N. W. 2d 243, 244. But it is more than a statute of limitations. It is a nonclaim statute wherein the claim of the State is not excepted. It should be kept in mind that section 11972, 1935 Code, states that:

"*All claims* of the fourth * * * classes, not filed and allowed, or if filed and notice thereof, as hereinbefore provided, is not served within twelve months from the giving of the notice aforesaid, will be barred * * *." (Italics supplied.)

It will be observed that the statute here referred to relates to "all claims." Even if we were to hold that the statute last quoted is a general statute of limitations, which we do not, we cannot by judicial interpretation nullify the definite pronouncement of the legislature which has particularly declared that the statute in question applies to "all claims." Moreover, we should keep in mind that, as said in Jackson v. Jones, 231 Iowa 106, 114, 300 N. W. 668, 672:

"A probate court, in its broadest sense, is a court of administration. It is a court that is charged with the duty of seeing that estates are properly and promptly administered."

It would not tend to the prompt closing of estates if we were to hold that a claim of the State of Iowa, as is now under

consideration, could be filed and considered as was authorized by the trial court in this case. There must be a time when an estate should be considered closed and administration finally terminated. If it had not been for the escheat proceedings relative to the claim of the heirs of Irene Peers, we do not see how the claim, as later filed by the State of Iowa, could have received consideration. It is true that a probate court will allow the filing of claims after the usual statutory period has expired, but this must be upon a proper showing. This was not done in this case.

Sound reasoning prompts us to hold that the claim of the State of Iowa should have been denied as having been barred by the failure of the State to timely file its claim. The majority of the courts that have passed upon this matter so hold and we are disposed to ally this court with the majority. We therefore are constrained to hold that the trial court was in error in allowing the claim of the State. The case is reversed and remanded for the entry of an order in conformity with this opinion.—Reversed and remanded.

SMITH, C. J., and MILLER, GARFIELD, MANTZ, OLIVER, BLISS, and MULRONEY, JJ., concur.