CHICAGO AND NORTH WESTERN RAIL-
WAY COMPANY et al., Appellants,

v.

CITY OF OSAGE et al., Appellees.

No. 53697.

Supreme Court of Iowa.

May 5, 1970.

---

Dunkelberg & McKinley, Osage, and Davis, Huebner, Johnson & Burt, Des Moines, for appellants.

Conway & Casey, Osage, for appellees.

MASON, Judge.

This is an equitable action to quiet title to certain real estate in and adjoining Osage which had constituted depot and division grounds for the Winona and South Western Railway Company and its successors in interest from 1891 to 1967 when it ceased to be used for railroad purposes. It presents the issue for our de novo review whether plaintiff or defendant owns the real estate.

In December 1967 the Chicago and Great Western Railway Company originally instituted this action naming Osage and all unknown claimants as defendants. The Chicago and North Western Railway Company succeeded to the interest of the Chicago Great Western Railway Company by merger and was substituted as plaintiff.

Where convenient plaintiff will be referred to as railroad, the municipal corporation of Osage as defendant.

The railroad alleged in its petition it was the absolute and unqualified owner in fee simple of the real estate involved; was credibly informed and believed defendant as a party to a certain instrument of record claims a supposed reversion of part of the property in the event it was ever abandoned or ceased to be used for railroad purposes. Since the property has ceased to be used for railroad purposes plaintiff alleges defendant's claim clouds its title.

Plaintiff further alleged the deeds by which its predecessor in interest took title to the real estate described contained no reverter clauses and specifically alleged in paragraph 5 that if there had been any right of reversion to defendant provided for it would now be barred by section 614.24, Code, 1966.

Answering the petition defendant denied the railroad was the absolute and unqualified owner in fee simple of the property in litigation and alleged that, in fact, it held only a qualified or determinable fee. It admitted being a party to the recorded instrument referred to, contending it was a contract between defendant and the railroad's predecessor in interest which provided in part:

"It is a further condition of this donation that the deeds to said property so donated shall provide that said grounds shall be used for no other purposes than railway purposes, and in case the same or any part thereof shall ever be abandoned or no longer used for said purposes by said Company or its Assigns, the same shall revert to said City."

Defendant denied its claim to a reversionary interest was barred by section 614.-24 and asserts it is now the absolute owner of the real estate.

The case was submitted on a stipulated record.

I. History of the ownership of the subject real estate is deemed helpful. Spelling of railroad names is from the record.

At the time of construction the property was owned by the Winona and South Western Railway Company. November 28, 1894, the line was purchased by Winona and Western Railway Company. September 10, 1901, it was purchased by the Wisconsin, Minnesota & Pacific Railroad Company. Effective June 1, 1920, the Wisconsin, Minnesota & Pacific Railroad Company was merged with the Chicago Great Western Railway Company. It was operated by them until 1935 and then by trustees for

them until 1941. February 20, 1941 it was taken over by the Chicago Great Western Railway Company, an Illinois corporation, and was operated by them until 1955, when it was taken over by the original plaintiff, Chicago Great Western Railway Company, a Delaware corporation.

Defendant had originally donated the property to the Winona and South Western Railway Company in 1891. Under authority of sections 637 and 638 of the Revised Statutes of 1888 the Osage city council followed the prescribed procedure to purchase for and donate to the Winona and South Western Railway Company land for depot and division grounds. At a special meeting October 22, 1890, with officers of the Winona and South Western Railway Company present, the council adopted a resolution to purchase and donate to the railway depot, division and terminal grounds upon conditions specified in the resolution.

The council proceeded to purchase the land owned by individuals in the name of the Winona and South Western Railway Company, the conveyances being made directly to the railway as purchased. The council supervised and accounted for all salvage from the properties as reflected in the minutes of its proceedings October 2, 1891.

The purchase price of the properties, less salvage, was $21,475.42. The total amount of the donation authorized at the election August 20, 1890, was $17,816, an amount equal to 5 percent of the assessed valuation of the property in Osage. The Winona and South Western Railway Company advanced the funds to pay for the individual properties as purchased and defendant subsequently reimbursed the railway $17,816 pursuant to the resolution adopted by the council October 22, 1890, and the instrument entitled "Deed or Contract" dated October 7, 1891.

Copies or extracts of minutes of council proceedings relating to acquisition of the divisional grounds, the deed or contract dated 1891 and other deeds conveying all or portions of the grounds were received in evidence by stipulation of the parties. The deeds conveying the property were identical in wording except as to description, the amount of consideration and the name of the grantor. A copy of one deed was made a part of the record.

At time of trial a large portion of the real estate had been improved by lessees in possession under leases expiring annually but which have been annually renewed for many years.

Plaintiff has entered into a contract with Osage Development Corporation agreeing that if title is quieted in plaintiff it will convey the real estate to the development corporation. The corporation has in turn informed the lessees it will convey the leased parcels to them on some equitable basis.

II. The trial court concluded as a matter of law that the 1891 deed or contract conveyed a clear intention and agreement of all parties that the railroad should use the land for railroad purposes and upon abandonment, title to the land would vest in defendant. Furthermore, provisions of Code section 473.1 require the abandoned right-of-way revert to the city. From the date of the abandonment of the railroad property in 1967 plaintiff had no right, title or interest in the real estate.

Defendant concedes and we agree this Code section is not involved here.

Consistent with these determinations judgment was entered decreeing defendant the absolute fee simple owner of the real estate. From this determination plaintiff appeals.

The railroad asserts the court erred in (1) concluding the deed or contract between defendant and the Winona and South Western Railway Company created an interest in defendant's favor upon abandonment of the land for railroad purposes, (2) concluding that Code section 614.24 did not bar any interest defendant might have in the property involved, (3) not quieting

title in plaintiff and (4) quieting title in defendant as propositions relied on.

III. We consider first the railroad's contention defendant's interest, if any, in the property is barred by Code section 614.-24 which provides in part:

"No action based upon *any claim* arising or existing by reason of the provisions of any deed or conveyance or contract or will reserving or providing for any reversion, reverted interests or use restrictions in and to the land therein described shall be maintained either at law or in equity in any court to recover real estate in this state or to recover or establish any interest therein or claim thereto, legal or equitable, against the holder of the record title to such real estate in possession after twenty-one years from the recording of such deed of conveyance or contract * * * unless the claimant shall, by himself, or by his attorney or agent, * * * file a verified claim with the recorder of the county wherein said real estate is located within said twenty-one year period. In the event said deed was recorded or will was admitted to probate more than twenty years prior to July 4, 1965, then said claim may be filed on or before one year after July 4, 1965. * . * * For the purposes of this section, the claimant shall be any *person* or *persons* claiming any interest in and to said land or in and to such reversion, reverter interest or use restriction, whether the same is a present interest or an interest which would come into existence if the happening or contingency provided in said deed or will were to happen at once. * * *" (Emphasis supplied).

Of course, defendant did not comply with this statute.

 Normally the question of the applicability of this statute to the municipality would depend on whether defendant's donation involved a so-called "private" or "proprietary" activity as opposed to a "public" or "governmental" activity. General statutes of limitations run against municipalities when they are engaged in proprietary activities. They only enjoy sovereign immunity from general limitation statutes when acting in their governmental capacities. State ex rel. Schlegel v. Munn, 216 Iowa 1232, 1237–1238, 250 N.W. 471, 473, and citations; Great Western Ins. Co. v. Saunders, 223 Iowa 926, 928–930, 274 N.W. 28, 30–31, and citations; Brewer v. Claypool, 223 Iowa 1235, 1238, 275 N.W. 34, 35. But the railroad claims such distinctions are meaningless in the instant case because section 614.24 is not a general statute of limitations. It is more than a statute of limitations, being a non-claim statute, which applies to municipalities without regard to this distinction.

 Non-claim statutes of limitations do differ from general statutes of limitations in that they impose a condition precedent to the enforcement of a right of action, while the general statute of limitations creates defenses that must be pleaded and may be waived. Non-claim statutes relate to an exercise of a right, while general statutes of limitation pertain only to remedies. Alternatively stated, non-claim statutes extinguish the right to sue and not merely the remedy. In re Estate of Peers, 234 Iowa 403, 409, 12 N.W.2d 894, 897. See also Donnally v. Montgomery County Welfare Bd., 200 Md.App. 534, 540–542, 92 A. 2d 354, 357, 34 A.L.R.2d 996, and citations; State ex rel. State Bd. of Charities & Reform v. Bower, Wyo., 362 P.2d 814, 823, and citations. But non-claim statutes are those found in the probate code fixing the time in which claims against a decedent's estate must be filed. See In re Estate of Peers, supra; and In re Estate of Ashing, 250 Iowa 259, 93 N.W.2d 587. As stated in an annotation at 34 A.L.R.2d 1003, 1004–1005, " * * * [S]tatutes of nonclaim * * * are normally considered to be those statutes, usually found in the probate code, fixing the time within which claims against a decedent's estate must be filed or presented to the executor or administrator, and which usually further provide that the

claim will be barred if not presented within such time."

" * * * This is a true statute of limitation designed to bar claims which have no longer any social or economic utility and, at the same time, to provide for periodic renewal of active claims." Marshall, Iowa Title Opinions and Standards, 12.3(E–1), page 70, pocket supplement (1966).

■ Although we reject the railroad's contention that section 614.24 is a non-claim statute, its assertion of the bar of the statute raised in the pleadings still requires a construction of its terms.

■ In construing statutes we must look to the object to be accomplished, the evils sought to be remedied, or the purpose to be subserved, and place on it a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it. Overbeck v. Dillaber, 165 N.W.2d 795, 797 (Iowa 1969); State v. Robinson, 165 N.W.2d 802, 805 (Iowa 1969).

"The problem which the recent law 'Barring Stale Uses and Reversions' is designed to solve, is how to terminate the restrictions which have lost their utility and yet to preserve those which still retain important social or economic values.

"In Iowa it was an almost universal practice for rural or 'district' schools to be established on a square acre in at least every township. The usual practice was for the acre to be deeded to trustees of the district with the provision that the land should be used only for school purposes, and if it should cease to be so used, title should revert to the grantor or his heirs. Sometimes the reverter clause provided that the land should revert to the farm or acreage from which it was taken—usually a quarter-section farm. Railroad and church grants frequently carried similar language. Many city plats and subdivisions were restricted by provisions that if intoxicating liquors were ever sold thereon, title would revert.

"In recent years most Iowa district schools have been abandoned because of consolidations, railroad rights of way have been altered or abandoned, and the attitude toward liquor sales has changed considerably. The results have been to complicate titles and to make it difficult or almost impossible to render such titles marketable.

"Iowa is fortunate that we have a very liberal quiet title law. One, whether in or out of possession, claiming an interest in land may bar claims against any person claiming title thereto although not in possession.
" * * *

" * * * [Where a 'reversion' is involved] the only practical relief is to quiet title. When all possible claimants are within reach of the court (jurisdiction), and if there is no successful defense, title may be cleared." Marshall, Iowa Title Opinions and Standards, supra, pages 68–69.

■ We also must ascertain and give effect to the intention of the legislature. In re Estate of Millers, 159 N.W.2d 441, 443 (Iowa 1968).

Further, in making this determination statutes relating to the same subject matter or closely allied subjects must be considered in light of their common purpose and intent. Such statutes are "in pari materia". Boomhower v. Cerro Gordo County Board of Adjust., 163 N.W.2d 75, 76 (Iowa 1968); Northwestern Bell Tel. Co. v. Hawkeye State Tel. Co., 165 N.W. 2d 771, 774 (Iowa 1969); Larsen v. Pottawattamie County, 173 N.W.2d 579, 581 (Iowa 1970).

In In re Estate of Peers, 234 Iowa at 411, 12 N.W.2d at 898, though determining the statute involved applied to the state because it was a non-claim statute, we said in attaching great significance to the words "all claims", " * * * It will be observed the statute here referred to relates to 'all claims'. Even if we were to hold that the statute last quoted is a

general statute of limitations, which we do not, we cannot by judicial interpretation nullify the definite pronouncements of the legislature which has particularly declared that the statute in question applies to 'all claims'." The words "any claim" and "any person" in section 614.24, on the basis of this authority, could be construed to apply to the municipality. Other facts lend support to our reaching such a conclusion.

Sections 614.14 through 614.38, Code, are statutes designed to shorten the period of search required to establish title in real estate and give effect and stability to record titles by rendering them marketable and alienable—in substance to improve and render less complicated the land transfer system. Collectively these statutes are sometimes referred to as our "Marketable Title Act". Tesdell v. Hanes, 248 Iowa 742, 747, 82 N.W.2d 119, 121; Paul E. Basye, Trends and Progress—The Marketable Title Acts, 47 Iowa L.Rev. 261, 268; Marshall, Iowa Title Opinions and Standards, supra, at section 12.3(B), page 291.

Iowa was the first state to pass legislation of this type, in 1919 enacting what is now in substance section 614.17, Code. Tesdell v. Hanes, supra, 248 Iowa at 747, 82 N.W.2d at 121, 122. Additional statutes passed in recent years have been to complete and round out this pioneering legislation. Marshall, Iowa Title Opinions and Standards, supra, page 70. Notable among them are 614.24, enacted in 1965, and 614.29 to 614.38, effective July 1, 1969.

This most recent marketable title legislation, sections 614.29 to 614.38, specifically sets out the persons or claimants whose interests are subject to the act. In reference to the other newly enacted statutes section 614.33, Code, effective July 1, 1969, provides that on failure to comply with their terms, " * * * all such interests, claims or charges, however denominated, whether legal or equitable, present or future, whether such interests, claims or charges are asserted by a person able to assert a claim on his own behalf or under a disability,

whether such person is within or without the state, whether such person is natural or corporate, or is private *or governmental*; are hereby declared to be null and void" (Emphasis supplied).

Section 614.36, further states:

"This chapter shall not be applied to bar any lessor or his successor as a reversioner of his right to possession on the expiration of any lease; or to bar or extinguish any easement or interest in the nature of an easement, the existence of which is apparent from or can be proved by physical evidence of its use; *or to bar any right, title or interest of the United States,* by reason of failure to file the notice herein required" (Emphasis supplied).

Significantly, no exception was carved out for the state or its political subdivisions.

In 1962 it was urged that any new marketable title legislation in Iowa should hold down the number of exceptions to the act to a bare minimum. The reasoning was that if one of the main purposes of marketable title legislation is to reduce extensiveness of title search, it would seem that any exception to the act would render it less effective in accomplishing this end. For the state to except itself from the operation of the law would be to frustrate the very policy objectives of stabilizing land transactions that the act was designed to accomplish. Note, 47 Iowa L.Rev. 389, 394–395. The limited number of exceptions in the above legislation can be interpreted to be an expression of intent by the legislature to strengthen our Marketable Title Act.

Illinois and Minnesota have passed Marketable Title Acts applicable to the state and its political subdivisions. See Basye, Clearing Land Titles, sections 171–184, page 259; 2 Patton on Titles, section 563, page 440. Connecticut, Indiana, Wisconsin and the Model Marketable Title Act also make governmental units subject to the act.

We therefore conclude the words "any claim" and "any person" in section 614.24 make the provisions of that statute applicable to the municipality whether engaged in a governmental or proprietary function. The language is open to such a construction and the result better effectuates the purpose of the statute and carries out the intention of the legislature.

The court erred in quieting title in defendant. Its decree must be set aside.

In view of our holding, we do not reach the other propositions relied on for a reversal.

For a decree quieting title to the real estate described in exhibit a attached to plaintiff's petition, the case is

Reversed and remanded.

All Justices concur, except LeGRAND, J., who dissents, and REES and UHLENHOPP, JJ., who take no part.